Rockwell *v.* York County Retirement Board, Appellant.

Argued September 25, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*Lewis P. Sterling,* for appellant.

*Harry C. Elsesser, Jr.,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, December 5, 1961:

Ella M. Rockwell, a court stenographer employed by Fayette County, voluntarily retired under a superannuation retirement plan of Fayette County on March 1, 1947 and from that date until January 8, 1960 she received retirement pay from Fayette County. In 1947, Miss Rockwell, having left her employment by Fayette County, became a court stenographer and an employee of York County and, as such court stenographer, she received an annual salary plus transcript and folio fees.

During 1959, pursuant to the Fourth Class County Retirement Law,[1] the County Commissioners of York County, by a duly adopted resolution, created a retirement system for employees of York County, which retirement system became effective on January 4, 1960.

---

[1] Act of July 8, 1941, P. L. 298, as amended, 16 PS §11561 et seq.

The parties have stipulated that on January 4, 1960—the effective date of the retirement system—Ella May Rockwell was an "original member" of the retirement system within the meaning of the Fourth Class County Retirement Law and remained an "original member" until her death on January 8, 1960, just four days subsequent to the effective date of the retirement system.

Prior to her death at age 72, Miss Rockwell had attained "superannuation age", had never made any application to York County for retirement benefits and York County was indebted to her in the amount of $80.21 for salary from January 1, 1960 to January 8, 1960.

Subsequent to Miss Rockwell's death, Mary C. Rockwell, as executrix of Miss Rockwell's estate, requested the York County Retirement Board (Board)[2] to deduct from the salary then due Miss Rockwell by York County her proportionate contribution to the retirement fund on account of salary earned from January 4, 1960 to January 8, 1960; upon refusal by the Board to do so, a tender was made to the Board of the amount Miss Rockwell would have been required to contribute to the retirement fund and this tender was refused by the Board.

Miss Rockwell's executrix then instituted an action against the Board in the Court of Common Pleas of York County wherein the parties stipulated the essential facts. That court (LIVERANT, J., dissenting, in part), entered a judgment in favor of Miss Rockwell's estate and against the Board in the amount of $10,-265.23 conditioned upon Miss Rockwell's estate paying to the Board the contribution required for the period from January 4, to January 8, 1960. This appeal followed.

---

[2] Created under the Fourth Class County Retirement Law, supra, and composed of the County Commissioners, the County Controller and the County Treasurer of York County.

This appeal raises three issues: (1) whether the estate of a deceased county employee who was employed on the effective date of the retirement system but died before contributing to the retirement fund and before making application for retirement is entitled to the benefits of the retirement fund so long as her personal representative tenders the contribution based upon the compensation earned between the effective date of the system and the date of death; (2) whether folio and transcript fees paid to a court stenographer are to be included in computing the retirement benefits of such court stenographer; (3) whether a county employee is barred from receiving retirement benefits from two different and separate political subdivisions?

On January 4, 1960, Miss Rockwell was a "county employee" of York County within the terms of the Act (Act of August 28, 1959, P. L. 772, §1, 16 PS §11562) and classified thereunder as an "original member" of the retirement system. Upon the establishment of the system Miss Rockwell had no option as to membership in the fund; it was mandatory upon her, under the provisions of the Act, as an "appointed county employee", to "become a member of the retirement system . . . as of the date the (system) is established"[3] and she was required to contribute to the fund through payroll deductions which it was the obligation of the Board to require.[4] Likewise it was the duty and obligation of the county to appropriate moneys into the fund.[5] On

---

[3] Section 9 of the Act of July 8, 1941, P. L. 298; Act of May 28, 1943, P. L. 789, §1; Act of April 14, 1949, P. L. 446, §1, 16 PS §11569.

[4] Section 6 of the Act of 1941, supra; Section 1 of the Act of May 17, 1949, P. L. 1398; Section 1 of the Act of July 27, 1953, P. L. 610; 16 PS §11566.

[5] Moneys contributed to fund by the county are credited to "a county annuity reserve account", while members' contributions are credited to a "members annuity reserve account".

the date of the establishment of the system, Miss Rockwell automatically became a member of the system, mandated by the legislature to contribute to the fund and had then reached the superannuation age. For the four days during which Miss Rockwell remained a county employee the county was not only obligated to pay her for her services but also to deduct from such payment her contribution to the fund.

The Board argues that Miss Rockwell, having failed to file a written statement setting forth at what time she desired to retire, did not become entitled to retirement benefits. Under one section of the Act (1941, July 8, P. L. 298, §12; 1949, May 17, P. L. 1398, §2; 1953, July 27, P. L. 610, §1, 16 PS §11572) a contributor, reaching superannuation retirement age, "*may*[6] retire for superannuation" by filing a written statement with the board setting forth when the contributor desires to retire and under another section of the Act (1941, July 8, P. L. 298, §13.1, added 1955, Oct. 7, P. L. 680, §4) a contributor entitled to retire by reason of reaching superannuation retirement age "*may*"[7] file with the board an application for retirement requesting retirement to become effective as of the time of death and electing one of the four options and naming a beneficiary. The Board held, that absent such applications by Miss Rockwell, no right to retirement benefits arose. With this contention we cannot agree. From an examination of the Act in its entirety it is clear that Sections 12 and 13.1 provide simply methods whereby a member of the retirement system, having attained superannuation age (age 60), *may* give notice to the Board and select an appropriate option for the payment of benefits. It was not the legislative purpose, in the case of a member who dies before giving such

---

[6] Emphasis supplied.

[7] Emphasis supplied.

notice, to deprive such member's estate of retirement benefits. In fact, Section 4 of the Act, as amended,[8] provides that any "contributor who . . . by reason of having reached superannuation retirement age, and who shall die while in county service before filing with the retirement board a written application for retirement . . . shall be considered as having elected Option One, . . . as of the date of . . . her death". In such event, payment under Option One shall be made to "[either] the beneficiary designated [or] legal representative of said contributor." Under Option One payment is made of the balance of the value of the *member's annuity and county annuity*. The Act[9] further provides: "In computing the length of service of a contributor for retirement purposes, full credit shall be given to each original member for each year of service rendered to the county prior to the time the system became effective". Had Miss Rockwell retired on January 8, 1960, even though she had only made one contribution to the fund, in the computation of the benefits to which she was entitled, she would have been credited with her prior years of service; her estate is entitled to no less.

In *Retirement Board of Allegheny County v. McGovern*, 316 Pa. 161, 172, 173, 174, A. 400, we stated: ". . . To effect a beginning and to obtain the desired result, there must be some date when the system will start and contributions begin. A given year, a fixed, definite day was usually selected . . . .

"To require all employees of a city, county and state to contribute for the entire length of time they were in service prior to the effective date of the act would be subversive of the proper purposes of the legislative

---

[8] Act of July 8, 1941, P. L. 298, §§13.2, 13.3, added 1955, Oct. 7, P. L. 680, §4, 16 PS §11575.

[9] Act of 1941, supra, §11; Act of 1943, supra, §1; Act of June 28, 1947, P. L. 1066, No. 457, §1, 16 PS §11571.

undertaking. The mass of such employees is usually of those receiving small wages and would generally be unable to make such payment. As a result, the State here required the municipality to contribute a given sum to the board for a future reserve for retirement pay. This appropriation is not to an individual as such, but it is an appropriation to a fund, a part of which the particular employee may or may not receive . . . .

". . . as it was viewed by other courts in determining the constitutionality of like systems under similar articles, such delayed compensation may be considered as an inducement for the experienced employee and others to remain in the employ of the government." See also: *McBride v. Allegheny County Retirement Bd.*, 330 Pa. 402, 199 A. 130.

*Haldeman v. Hillegass*, 335 Pa. 375, 6 A. 2d 801, is particularly apposite. On December 10, 1937, Montgomery County established a retirement system to become effective January 1, 1938. Haldeman, who had been prothonotary of the county since 1922 and whose term expired on January 3, 1938, immediately notified the retirement board of his intention to become a member of the system. On January 1, 1938 he mailed his personal check, as his contribution to the funds, to the board which declined to accept either the check or application of membership. In a mandamus proceeding we held that Haldeman was entitled to the retirement benefits. The real objection to payment to Haldeman, as in the case at bar, lay in the fact that by a single payment to the annuity reserve account and his employment for such a short time after the effective date of the act, he became a member of the system entitled to credit for his past years of service. This Court fully answered that objection (pp. 385, 386): "Appellees' real objection to paying appellant adjusted compensation, or retirement pay, lies in the fact that by a single payment to the annuity reserve account, and his em-

ployment for such a short time after the effective date of the Act, he becomes a beneficiary-member. We endeavored in Retirement Board v. McGovern et al., 316 Pa. 161, and McBride v. Allegheny County Retirement Board et al., 330 Pa. 402, to answer this objection and demonstrate the reason why one contribution payment is sufficient to entitle a member to retirement pay. This is in effect an acknowledgment by the legislature of prior service, and a recognition by it that long and faithful public employment should be compensated, emphasizing the purpose and scope of the provisions for retirement pay or delayed compensation . . . . The various retirement acts adopted in this Commonwealth, including the present act, have as their purpose, not the bestowal of a gratuity upon governmental officeholders, but compensation for extended and faithful services performed, and to be performed, on behalf of the governmental body and the public."

Miss Rockwell's estate will receive a windfall by reason of one contribution to this system. However, she had served the county for approximately thirteen years and the legislature has provided by appropriate legislation that either she, or her estate, shall be compensated for her past services even though she or her estate made only one contribution to the fund. With the legislative mandate this Court cannot and should not interfere.

Upon what base shall Miss Rockwell's retirement benefits be computed?—on her salary alone or on her salary plus folio and transcript fees? As stipulated, Miss Rockwell's "average salary" under the Act, based on her straight salary,[10] was $4,413.34, while her "average salary", based on her straight salary plus transcript of folio fees, was $5,801.66.

---

[10] The average annual salary for her highest five years of service.

Under Section 1623 of The County Code,[11] the salary board—i.e., three county commissioners and county controller, or the county treasurer in counties where there is no controller—shall fix the *compensation* of all stenographers appointed by the judges of the county. Section 1 of the Act of June 28, 1951, P. L. 936 (17 PS §1810) provides that every "official stenographer" shall be paid, in addition to the compensation otherwise provided, 25¢ for each one hundred words of every copy of the stenographic notes and of other matters in connection with the business of the court and 10¢ for each one hundred words of every copy given to counsel or parties and payment thereof shall be made by the county upon order of the presiding judge. Compensation payable to court stenographers, therefore, by *statute* comprises *both* a salary and folio and transcript fees, the said fees arising from business connected with the court or ordered paid by the presiding judge. In *Morganroth's Election Contest Case,* 346 Pa. 327, 330, 331, 29 A. 2d 502, we recognized that a court stenographer's fees and expenses were part of the general expense of holding the courts of the county. See also: *County of Lehigh v. Meyer,* 102 Pa. 479; *Russell v. Philadelphia,* 236 Pa. 560, 84 A. 1101. If the folio fees do not arise from the official business of the court or if the transcript fees are not directed to be paid by the county by the court, such fees are not classified as compensation. This *official* nature of the services for which the fees are paid readily distinguishes the ruling in *McNeil v. Board of Retirement, etc.,* 51 Cal. 2d 278, 332 P. 2d 281.

If the stenographer who seeks retirement benefit is appointed by the court and if the salary is fixed by the salary board so that the stenographer is in all respects a "county employee", then the base for the calculation

---

[11] Act of August 9, 1955, P. L. 323, 16 PS §1623.

of the retirement benefits shall be the salary of such stenographer plus the folio and transcript fees which together constitute the stenographer's commission. See: *Christ v. Berks County Retirement Board,* 36 Berks 169.[12]

Lastly, the Board complains that the effect of the ruling of the lower court is that Miss Rockwell and her estate will have received retirement benefits from two different political subdivisions at the same time. The whole argument of the Board in this respect is based on the language of this Court in *Schmidt v. Allegheny County Retirement Board,* 394 Pa. 105, 108, 145 A. 2d 692 wherein we said: "The purpose of the Act of 1953 was to give effect to the public policy against governmental employes receiving more than one retirement allowance from governmental retirement systems." Such language must be read within the framework of *Schmidt* for *Schmidt* dealt only with a prohibition contained in the Second Class County Code[13] rendering ineligible for a retirement allowance from the county employee's retirement system any person who receives a pension annuity or retirement allowance from the U. S. Government, the Commonwealth of Pennsylvania, its departments, boards, commissions and agencies and of the political subdivisions thereof. In no instance, other than second class counties, has the legislature proscribed the receipt of retirement benefits from more than one political entity.

It is urged that this court should as a matter of public policy enunciate a prohibition against the receipt of such dual benefits. In *Mohler's Estate,* 343 Pa. 299, 303, 22 A. 2d 680, we recognized the right of

---

[12] Contribution to the system by a court stenographer must be calculated on the salary plus folio and transcript fees.

[13] Acts of July 28, 1953, P. L. 723, §1716, as amended by the Act of May 31, 1955, P. L. 111, §1, 16 PS §4716.

this Court to establish public policy. However, in *Commonwealth ex rel. McCreary v. Major,* 343 Pa. 355, 360, 22 A. 2d 686, we delineated the extent of our power to do so: "The power of the court to determine what is against public policy, in a proper case, is well recognized. We said in Mamlin v. Genoe, 340 Pa. 320, 325: 'It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal.' " In the case at bar, we perceive no such "virtual unanimity of opinion" on the propriety of a person receiving retirement allowance from two different political subdivisions such as would justify us in declaring such practice against public policy. Certainly in *Baker v. Retirement Board of Allegheny County,* 374 Pa. 165, 97 A. 2d 231, and *Mauch v. Allegheny County Retirement Board,* 381 Pa. 492, 113 A. 2d 230, we discerned no such public policy.

While it seems unfair that the legislature, in the case of second-class counties, has established one standard and, in the case of all other political subdivisions, by legislative inaction, established another standard, such fact does not justify this Court in finding payment of dual benefits invalid. Such is clearly a matter for the legislature, not this Court. Until the legislature sees fit to act, the employees of second class counties, in respect to retirement allowances, are, as compared to employees of all other political subdivisions, second class citizens.

Judgment affirmed.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

For 4 days' work, with no payment of any kind or amount into the retirement fund, Miss Rockwell was awarded retirement compensation of $10,265. I dissent from this *unearned* colossal gift which I believe is morally, legally and constitutionally unjustifiable: Article IX, §9; see also: Article III, §11, of the Constitution of Pennsylvania.

Miss Rockwell at the time of her death on January 8, 1960, was receiving, and her estate now receives, so-called retirement compensation from the County Commissioners of Fayette County, in which County she had worked prior to 1947 as a Court stenographer. Her executrix now seeks an additional retirement compensation from the County Commissioners of York County.

Miss Rockwell had been employed and paid in full for her services as a Court stenographer of York County since 1947. The County Commissioners of York County adopted a retirement system for employees of York County, effective January 4, 1960.

Miss Rockwell did not pay nor did the County deduct or pay in her behalf her proportionate contribution to the Retirement Fund on account of the salary which she earned for four. (4) days from January 4 to January 8, 1960. This payment would have amounted to five dollars and sixty-one cents ($5.61). After her death her executrix tendered $5.61 to the Retirement Board; the Board refused the tender; the lower Court sustained her claim and awarded her $10,265.

This case is an extension of a theory—which, at best, is a strained theory—beyond anything heretofore allowed. Only by a wild stretch of the imagination could this $10,265 be considered realistically, validly and constitutionally, "deferred or adjusted compensation". The purpose of retirement pay is not the bestowal of a gift or gratuity or additional compensa-

tion, at the expense of the. taxpayers, for past services[*]—these would undoubtedly be unconstitutional.

Article IX, §7, of the Constitution provides: "The General Assembly shall not authorize any county . . . to . . . appropriate money for . . . any . . . individual."

Article III, §11, of the Constitution clearly expresses the public policy of Pennsylvania when it provides: "No bill shall be passed giving any extra compensation to any public officer, servant, employe . . . after services shall have been rendered . . . ."

If the language of the Fourth Class County Retirement Law of 1941—York is a Fourth Class County—permits a gift or a payment such as is claimed in the instant case, irrespective of what it is called, I would hold (a) that provision to be so unreasonable, and so unjustifiable to the taxpayers, and so prejudicial to the fund and its other members, and so devoid of consideration, as to amount to nothing more than a "gratuity" for services after they have been rendered, and (b) that for these reasons it is unconstitutional: Constitution of Pennsylvania, supra; see also: *Mohler's Estate,* 343 Pa. 299, 303, 22 A. 2d 680; *Commonwealth ex rel. Mc-Creary v. Major,* 343 Pa. 355, 360, 22 A. 2d 686; *Mamlin v. Genoe,* 340 Pa. 320, 325, 17 A. 2d 407; *Schmidt v. Allegheny County Retirement Board,* 394 Pa. 105, 108, 145 A. 2d 692; *Jameson v. Pittsburgh,* 381 Pa., supra.

---

[*] In *Jameson v. Pittsburgh,* 381 Pa. 366, 113 A. 2d 454, this Court declared the Act of August 21, 1953, P. L. 1255—which authorized the pension board to establish a program whereby any beneficiary under the pension fund, upon the payment of $200, shall be entitled to receive from the fund certain additional payments—was void as to a beneficiary who was retired at the time of the enactment of the statute, as a violation of Article III, §11 of the Pennsylvania Constitution.