409 A.2d 352

**Allen N. BRUNWASSER, Appellant,**

**v.**

**Barton FIELDS, Secretary of the Commonwealth, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 17, 1979.

Decided Dec. 21, 1979.

Reargument Denied April 29, 1980.

444 (1976) (entertaining claim brought on behalf of class by representative whose individual claim is moot).

284

Allen N. Brunwasser, Pittsburgh, pro se.

Elisabeth S. Shuster, Deputy Atty. Gen., Robert Kelley, Harrisburg, for appellee.

Before EAGEN, C. J., and ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION

NIX, Justice.

Appellant, Allen Brunwasser, filed an original action in the Commonwealth Court to enjoin appellee, Secretary of

the Commonwealth, from issuing a certificate of election to Allegheny County Common Pleas Judge I. Martin Wekselman. Alternatively, appellant seeks mandamus to force the Secretary to recall the certificate since it already has been issued and filed. The procedural facts underlying the instant action were succinctly set forth by President Judge Bowman in the opinion for the Commonwealth Court: [1]

Judge Wekselman was elected to begin service as an Allegheny County Judge by winning both the Republican and Democratic nominations in the primary election held in May of 1977, and by receiving the majority of votes in the November, 1977, general election. Upon certification by the local election board of these election returns it then became the duty of the Secretary to issue a certificate of election to the successful candidate. Section 201(f) of the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 2621(f).

The gravamina of petitioner's complaint are allegations of a host of Election Code violations regarding campaign contributions to Judge Wekselman's campaign, as reflected in the expense accounts filed by him with the Allegheny County Board of Elections. These violations are purported to include alleged contributions from certain law firms, corporations, and unincorporated associations; the failure to appoint a named election committee or to file a campaign collection and expense return; and distribution of literature on election day.

**1.** In addition to the procedural facts concerning the instant action, it is important also to recognize that appellant Brunwasser and Judge Wekselman have frequently clashed. This running battle culminated in an order by Judge Wekselman finding Brunwasser in contempt for failing to file tax returns or pay his taxes. Brunwasser was a guest of the Allegheny County Jail for five and one-half days until we stayed Judge Wekselman's contempt order pending the resolution of Brunwasser's appeal to the Commonwealth Court. That court has recently affirmed Judge Wekselman's orders. *City of Pittsburgh v. Brunwasser,* 40 Pa.Cmwlth. 197, 396 A.2d 907 (1979). Appellant concedes that there is a large measure of antagonism between he and Judge Wekselman and the vindictive nature of the instant lawsuit is readily apparent. Equitable remedies were not designed to serve such a base purpose.

It is petitioner's contention that notwithstanding the duty imposed upon the Secretary by Section 201(f) of the Election Code, Section 1851, 25 P.S. § 3551, prohibits the Secretary from issuing a certificate to Judge Wekselman under the extant circumstances, and so provides a basis for his cause of action. This Section directs:

"Any person who shall, while a candidate for office, be guilty of bribery, fraud or willful violation of any provision of this act, shall be forever disqualified from holding said office or any other office of trust or profit in this Commonwealth."

Now before us for consideration are preliminary objections filed by the Secretary initially raising our jurisdiction to entertain an equitable action in mandamus in view of Election Code provisions for redress of campaign fund violations.

*Brunwasser v. Fields,* 40 Pa.Cmwlth. 381, 383–384, 397 A.2d 479, 480 (1979) (footnotes omitted).

The Commonwealth Court dismissed the action after finding that appellant's remedy was limited to the statutory audit procedure mandated by section 1611 of the Election Code, 25 P.S. § 3231,[2] and that this procedure was fully adequate to provide a remedy for the complaint asserted. This section provides:

§ 3231. Audit of expense accounts

(a) Within twenty days after the last day for filing any expense account and affidavit required by this act any five electors of the State or of the political division may present a petition to the court of quarter sessions of the county in which is situated the office where such account has been filed, praying for an audit of such account. Thereupon the court shall direct the officer or board with whom such account has been filed to certify the same to the court for audit and may, in its discretion, require security to be entered for costs. The court may, in its

**2.** This section was repealed effective January 1, 1979, by the Act of October 4, 1978, P.L. 893, No. 171, and reenacted in substantially the same form at 25 P.S. § 3256 (Supp.1979–80) and became effective upon campaign financing occurring after January 1, 1979.

discretion, appoint an auditor to audit such account; but the fees of such auditor shall not exceed the sum of $10.00 per day for each day actually engaged. The court or auditor shall fix a day as early as may be convenient for the audit, at which time the person by whom such account has been filed shall be required to be present in person to vouch his account and to answer on oath or affirmation all such relevant questions concerning the same, as may be put to him by the petitioners or their counsel. The auditor shall issue subpoenas to all parties whom the petitioners or the accountant may require, to give evidence concerning such account, and he shall determine, subject to exception, all questions as to the admissibility of evidence, and shall file a copy of the evidence with his report. If upon the audit, the court shall decide that the account was false in any substantial manner, or that any expenses have been incurred in contravention of this act, the costs of said audit shall be paid by the accountant, otherwise the court shall make such order as to payment of costs as shall be just in the circumstances.

(b) The decision of the court upon the audit shall be subject to appeal to the Superior Court.

(c) If the court shall decide upon the audit that any person, whether a candidate or not, has accepted contributions or incurred expense or has expended or disbursed money in contravention of this act, or has otherwise violated any of the provisions of this act, it shall certify its decision to the district attorney of the county in which such person may reside, and it shall thereupon be the duty of such district attorney to institute criminal proceedings against such person.

(d) No person shall be excused from answering any question in any proceeding under this section on the ground that such answer would tend to incriminate him; but no such answer shall be used as evidence against such person in any criminal action or prosecution whatever, except in an action for perjury in giving such testimony.

Appellant sought review in this Court pursuant to 42 Pa.C. S.A. § 723 (1979 Pamphlet), and we now affirm the decree of the Commonwealth Court.[3]

Appellant Brunwasser contends that the audit procedure of § 1611 is inadequate to remedy his charges and that, therefore, it should not be the exclusive means of raising the instant objections. Appellant contends that the verified primary expense return filed by Judge Wekselman proves that Judge Wekselman has violated various provisions of the Election Code. From this contention, he argues that an audit of the Judge's campaign finances is unnecessary and that Judge Wekselman should, therefore, be immediately removed from his office pursuant to § 1851 of the Election Code. Brunwasser maintains that, unless he is allowed to pursue this independent action to enforce § 1851, that section "will still remain the law but be impossible to enforce. Candidates will then be advised that the Election Code is toothless and being human may be tempted to ignore it." Appellant's Brief at 22. Brunwasser acknowledges that, after the § 1611 audit, the Election Code devolves upon the various district attorneys the duty to enforce the Code through criminal prosecutions where the circumstances warrant such action, § 1611(c), 25 P.S. § 3231(c), and imposes upon the state attorney general the responsibility to institute in appropriate cases quo warranto proceedings against these candidates or elected officials, § 1612, 25 P.S. § 3232. Ignoring these provisions, Brunwasser insists that the entire enforcement mechanism created by the Election Code is ineffective unless he is allowed to pursue the instant mandamus action. We disagree.

Brunwasser has grossly misconceived the purpose and effect of the § 1611 audit procedures. These audits are not the mere accounting devices appellant claims they are. Instead, the audit is the instrument that triggers the enforcement mechanism of the Election Code. The scope of these

---

**3.** It should be noted that Judge Wekselman was not a party to the original action in the Commonwealth Court and is not represented in the appeal presently before this Court.

audits is not limited to whether the candidate's return is arithmetically correct; but extends to a determination of whether "any person, whether a candidate or not, has accepted contributions or incurred expense or has expended or disbursed money in·contravention of this act, or has otherwise violated *any* of the provisions of this act." § 1611(c), 25 P.S. § 3231(c) (emphasis added).

■ Our past cases have adhered firmly to the principle that the proper remedies for violations of the Election Code are to be found within the comprehensive legislative framework of the Code itself. As we stated in *Lurie v. Republican Alliance,* 412 Pa. 61, 63, 64, 192 A.2d 367, 369 (1963):

The Act of 1937, supra, known as the [Pennsylvania] Election Code (Code) provides the detailed procedure to be followed in regard to the accounting of the financial receipts and disbursements of candidates for elective office, as well as political committees. It prescribes how such accounts may be challenged and audited. It specifically designates the Court of Quarter Sessions as the tribunal having jurisdiction of such proceedings. The present action is bottomed upon a violation of the Code, as the court below correctly recognized. The complainants were legally required to follow the Code's prescriptions in challenging the violation.

Where a remedy is provided by an act of assembly, the directions of the legislation must be strictly pursued and such remedy is exclusive, Act of March 21, 1806, P.L. 558, § 13, 46 P.S. § 156. See also, *Thompson v. Morrison, Secretary of Comm.,* 352 Pa. 616, 44 A.2d 55 (1945); *Oteri's Appeal,* 372 Pa. 557, 94 A.2d 772 (1953).

* * * * * *

The provisions of the Code must be liberally and intelligently construed. The Code gives the Court of Quarter Sessions broad powers of inquiry in the supervision of election accounts. Said court in such a proceeding can, undoubtedly, compel the production of all information necessary to a comprehensive and honest audit thereof. To conclude otherwise would completely defeat the basic purposes of the statute.

And in *In re Shapp,* 476 Pa. 480, 484, 485, 383 A.2d 201, 203, 204 (1978), in discussing the audit and enforcement provisions of the Election Code we stated:

> It is a general rule, of course, that, where a remedy statutorily provided, the directions of the legislation must be strictly pursued and such remedy is exclusive. *Lurie v. Republican Alliance, supra.* And the exclusive remedy provided here is an audit for which petition must be made within thirty days after the last day for filing the expense account.
>
>          \*     \*     \*     \*     \*     \*
>
>   .  .  .   [W]e also reaffirmed in *Lurie* our unwavering position that we may not, under the rubric statutory interpretation, add to legislation matters conspicuously absent therefrom. *Id.,* 412 Pa. at 65, 192 A.2d at 370.

We are not presented with an enforcement mechanism that is either unwielding or too cumbersome to achieve its goal. All that is needed to force an audit of the target's campaign finances is a petition signed by five electors of the political division concerned. § 1611(a), 25 P.S. § 3231(a).[4] And, as stated above, the audit reaches into every facet of the financial return in search of violations. We believe that the audit procedure mandated by the Election Code provides appellant with an opportunity to fully redress the asserted grievances.

We are not swayed by appellant's contention that Judge Wekselman has "admitted" having violated provisions of the Election Code. Even if this were the case, the legislatively-mandated procedures of the Election Code must still be followed. The Commonwealth Court correctly rejected this argument stating:

4. Bitter acrimony often accompanies hotly contested elections. The statutory requirement of a petition signed by five electors is one method by which the legislature sought to avoid spite suits instituted by defeated candidates and their supporters. Although obtaining the signatures of five electors is a nominal requirement in view of the objective it is designed to achieve, i. e., to assure legitimacy of the litigation; to avoid harassment and discourage vexatious litigation, Brunwasser would have us ignore this prerequisite.

Dependent as the penalty provisions of the Election Code are, *inter alia,* upon "willful violations of any provision of this act," Section 1851 included, we are of the opinion that any invocation of these penalties is dependent in its turn upon adherence to procedures set forth elsewhere in the Code to inquire into the nature of the alleged violation. Any party seeking under Section 1851 to disqualify a candidate from holding office by reason of alleged illegal or otherwise irregular campaign contributions and expenses must comply with Section 1611 procedures.

Maintaining the internal consistency of the Election Code requires such a holding. Separate and apart from the general penalty provisions of the Election Code, that portion of the Code dealing with primary and election expenses contains penalty provisions pertinent thereto. . . . It is apparent the legislature intended that ouster for reason of contravention of contribution and expense requirements be made dependent upon Section 1611 procedures. It would be anomalous to hold Section 1851 disqualification proceedings to a different standard. *See* Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1921(c)(3) and (c)(6), 1932, 1933.

40 Pa.Cmwlth. at 386, 397 A.2d at 481.

Another compelling reason to reject Brunwasser's attempt to create a new remedy for these Election Code violations is that the legislature has deliberately committed to the discretion of the local district attorney and the state attorney general the decision of whether to proceed against the candidate or official for such violations.[5] It can fairly be

---

5. Although §§ 1611 and 1612 use the word "shall" in relation to seeking criminal prosecution and quo warranto respectively, this should not be interpreted as depriving the local district attorney or the attorney general of their traditional and inherent prosecutorial discretion. This is made clear in 25 P.S. § 3256, which replaced § 1611 effective January 1, 1979. There it is stated if an audit uncovers violation of the Election Code, the court "shall certify its decision to the appropriate prosecutorial officer and it shall thereupon be the duty of such officer to institute criminal proceedings as he or she shall deem necessary." 25 P.S. § 3256(b).

said that the legislature did not intend all violations—*e. g.,* minor or trivial infractions—of the Election Code to be the basis for such harsh penalties as forfeiture of office or criminal prosecutions. *See* Statutory Construction Act, 1 Pa.C.S.A. § 1922(1). Here, as elsewhere in our law, the doctrine of *de minimus non curat lex,* is fully applicable. To prevent potential injustice resulting from a mechanical application of the penalty provisions, the decision to seek forfeiture or prosecution was given to public officials who are called upon to make such decisions in the regular course of carrying out their official responsibilities. In this manner, the legislature called for the weeding out of those violations not warranting forfeiture of office or criminal prosecution.

An exercise of prosecutorial discretion has already occurred in the present case. Brunwasser sought to have the United States Attorney for the Western District of Pennsylvania initiate a federal prosecution of Judge Wekselman for violations of state and federal election laws. In a memorandum prepared by the U. S. Attorney's office, the federal authorities acknowledged that violations of state and federal law probably occurred but concluded that these violations did not warrant prosecution. This same type of filtering mechanism is implicit in the Election Code's referral of the decision to prosecute or seek quo warranto to the local district attorney and the state attorney general. To allow appellant to bypass this filter would fracture the legislature's carefully constructed structure of the Election Code.[6]

6. Nor do we accept Brunwasser's absurd claim that only through his mandamus action can the citizens of Allegheny County be protected from judges and other elected officials who are lawbreakers in their own right. If an audit of Judge Wekselman's campaign finances had uncovered violations of a degree to warrant criminal prosecution or an action for quo warranto and the district attorney or the attorney general failed to act, a mandamus action could then be brought to compel these officers to perform their official responsibilities. However, Brunwasser elected to ignore the established procedure and attempted to assert his judgment in place of that of the duly elected officials in the first instance.

Nor do we accept appellant's argument that his independent action should be permitted as a matter of public policy. This contention was well answered by our opinion in *Lurie v. Republican Alliance,* 412 Pa. at 65, 192 A.2d at 370.

Lastly, it is claimed that jurisdiction should be asserted on the grounds of public policy. Again, we must disagree. The enunciation of matters of public policy is fundamentally within the power of the legislature. See, *Knecht v. Saint Mary's Hospital,* 392 Pa. 75, 140 A.2d 30 (1958). While the courts may in a proper case, in the absence of a legislative pronouncement, determine what is against public policy, as stated in *Mamlin v. Genoe,* 340 Pa. 320, 321, at 325, 17 A.2d 407, at 409 (1941): "It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring." See also, *Commonwealth ex rel. McCreary v. Major,* 343 Pa. 355, 22 A.2d 686 (1941); *Rockwell v. York Co. Retirement Bd.,* 405 Pa. 406, 175 A.2d 831 (1961); *Commonwealth ex rel. Fox v. Swing,* 409 Pa. 241, 186 A.2d 24 (1962). This is not such a case. More importantly, the legislature has spoken and provided the remedy for resolving such matters and specifically designated the tribunal for such determination. If it intended to give jurisdictional power to a court of equity, such could easily have been expressed. As stated recently by this Court in *Commonwealth ex rel. Fox v. Swing,* supra, 409 Pa. at 246, 186 A.2d at 27, "It is not for us to legislate or by interpretation to add to legislation matters which the legislature saw fit not to include."

The only logical conclusion, therefore, is that the statutory remedy provided is adequate and the jurisdiction of the Court of Quarter Sessions is exclusive.

Having found that the § 1611 audit procedure is fully effective to redress appellant's grievances, it must follow that the § 1611 audit also is the exclusive method by which

violations of the Election Code may be remedied. As we stated in *Harrington v. Carroll,* 428 Pa. 510, 513, 238 A.2d 437, 438 (1968): "Where a remedy is provided by an act of assembly, the directions of the legislation must be strictly pursued and such remedy is exclusive." *See also* Statutory Construction Act, 1 Pa.C.S.A. § 1504 (statutory remedy preferred over common law).

The decree of the Commonwealth Court is affirmed. Appellant to bear costs.

O'BRIEN, J., did not participate in the consideration or disposition of this case.

MANDERINO, J., did not participate in the decision of this case.

ROBERTS, J., files a concurring opinion in which FLAHERTY, J., joins.

ROBERTS, Justice, concurring.

I agree this action should be dismissed. Neither mandamus nor an injunction is appropriate when another adequate remedy exists. *Valley Forge Racing Association, Inc. v. State Horse Racing Commission,* 449 Pa. 292, 297 A.2d 823 (1972) (mandamus); *Sixsmith v. Martsolf,* 413 Pa. 150, 196 A.2d 662 (1964) (injunction). The audit procedure established by the Legislature provides the appropriate mechanism for challenging violations of the campaign financing provisions of the Election Code. See *In Re Shapp,* 476 Pa. 480, 487, 383 A.2d 201, 205 (1978) (Roberts, J., joined by Pomeroy, J., dissenting).

FLAHERTY, J., joins in this concurring opinion.