445 A.2d 737

**Robert E. BELLOMINI**

v.

**STATE EMPLOYEES' RETIREMENT BOARD of the Commonwealth of Pennsylvania, Appellant.**

**Henry J. CIANFRANI**

v.

**COMMONWEALTH of Pennsylvania, STATE EMPLOYEES' RETIREMENT BOARD, Appellant.**

Supreme Court of Pennsylvania.

Argued March 2, 1982.

Decided May 28, 1982.

See also, 445 A.2d 88.

■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■

Susan J. Forney, Allen C. Warshaw, Deputy Attys. Gen., Harrisburg, for appellant.

Gregory L. Heidt, Falcone & Eppinger, Erie, Charles Golden, Barsky, Golden & Remick, Sharlyn B. Cohen, Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and McDERMOTT, JJ.

## OPINION

O'BRIEN, Chief Justice.

Appellees, Robert E. Bellomini and Henry J. Cianfrani, former employees of the Commonwealth of Pennsylvania, challenged the denial of their retirement benefits by the State Employees' Retirement Board (hereinafter "Board") by filing Petitions for Review invoking the original jurisdiction of the Commonwealth Court of Pennsylvania. Appellees attacked the constitutionality of the Public Employee Forfeiture Act, Act 1978–140, 43 P.S. § 1311 et seq. (hereinafter "Act 140"). Appellee Cianfrani had been receiving a monthly retirement allowance, which was terminated pursuant to Act 140. Appellee Bellomini's retirement benefits were denied, also pursuant to Act 140, when he applied for them. In both cases the Commonwealth Court directed the Board to enforce appellees' contractual retirement benefits rights. These appeals followed.

### I. *The Case of Appellee Bellomini*

Robert Bellomini was a member of the House of Representatives of the Commonwealth of Pennsylvania for fourteen years, from December 1, 1964, until his resignation on June 14, 1978. Ten days before his resignation, appellee was convicted of two counts of unlawfully obstructing, delaying and affecting interstate commerce by extortion, in violation of 18 U.S.C. § 1951.

During his tenure as a state representative, Appellee Bellomini, a member of the State Employees' Retirement System (hereinafter "System"), contributed $20,714.87. On August 1, 1978, he applied for a state retirement allowance. By letter dated August 22, 1978, the Board informed Bellomini that his retirement benefits were denied based upon Act 140. Bellomini's contributions to the System, excluding interest, were returned by the Board on January 22, 1979. On February 12, 1979, Appellee Bellomini filed his Petition for Review in the Commonwealth Court. That court, on January 27, 1980, entered an order enjoining the Board from withholding Bellomini's retirement benefits. The Board filed its Notice of Appeal to this Court *Nunc Pro Tunc* on May 11, 1981.

## II. *The Case of Appellee Cianfrani*

Henry Cianfrani was a Commonwealth employee for approximately eighteen years. He was employed by the Pennsylvania Department of Revenue from May 4, 1959, until November 30, 1962. Subsequently, from December 1, 1962, until November 30, 1966, Cianfrani was a member of the Pennsylvania House of Representatives. Following his tenure in the House, Cianfrani was a member of the Senate of the Commonwealth of Pennsylvania for eleven years, from December 1, 1966, until his resignation on December 15, 1977. Throughout this eighteen-year period, Appellee Cianfrani, as a member of the System, contributed $28,404.48.

Upon his resignation in December, 1977, Cianfrani applied for retirement benefits. He received his personal contributions in a lump sum payment and concurrently began receiving a monthly allowance. On December 30, 1977, Cianfrani entered pleas of guilty to racketeering, in violation of 18 U.S.C. § 1962(c), mail fraud, in violation of 18 U.S.C. § 1341, and obstruction of justice, in violation of 18 U.S.C. § 1503, and a plea of *nolo contendere* to tax evasion, in violation of 26 U.S.C. § 7201, in the United States District Court for the Eastern District of Pennsylvania.

By letter dated August 23, 1978, Appellee Cianfrani was notified that since his retirement benefits had been terminated pursuant to Act 140, health insurance coverage had been cancelled. On April 9, 1981, Cianfrani filed his Petition for Review in the Commonwealth Court challenging the constitutionality of Act 140. On February 3, 1982, based upon *Burello v. State Employes' Retirement System*, 49 Pa.Commonwealth Ct. 364, 411 A.2d 852 (1980), and *Miller and Fineman v. State Employees' Retirement System*, 498 Pa. 103, 445 A.2d 88 (1981), the Commonwealth Court granted Cianfrani's motion for summary judgment and ordered the Board to restore his retirement benefits. The Board filed its Notice of Appeal to this Court on February 9, 1982. The cases were consolidated for appeal upon Appellee Cianfrani's petition.

III. *The Retroactive Application of Act 140 Effects an Unconstitutional Impairment of the Obligation of Contract*

Act 140 provides, in pertinent part,

"Section 3. Disqualification and forfeiture of benefits.

"(a) Notwithstanding any other provision of law, no public official or public employee nor any beneficiary designated by such public official or public employee shall be entitled to receive any retirement or other benefit or payment of any kind except a return of the contribution paid into any pension fund without interest, if such public official or public employee is convicted or pleads guilty or no defense to any crime related to public office or public employment.

"(b) The benefits shall be forfeited upon entry of a plea of guilty or no defense or upon initial conviction and no payment or partial payment shall be made during the pendency of an appeal... Such conviction or plea shall be deemed to be a breach of a public officer's or public employee's contract with the employer.

\* \* \* \* \* \*

"Section 6. Severability.

"The provisions of this act shall be severable. If any provision of this act or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the act are so essentially and inseparable connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

"Section 7.  Retroactively.  [sic]

"The provisions of this act shall be retroactive to December 1, 1972.

"Section 8.  Effective date.

"This act shall take effect immediately."

■  The Board asserts that Act 140 merely makes explicit the implied contractual duty of Commonwealth employees to provide faithful service to the Commonwealth as a condition precedent to the receipt of retirement benefits.  It further claims that Act 140 does not *create* the condition of faithful service, it merely clarifies its scope by defining it to include a list of specified crimes.  Other jurisdictions have discussed this implied condition theory.  However, it is essential to first examine the essence of the right that is here involved.

■  It has long been recognized in Pennsylvania that retirement provisions for public employees constitute deferred compensation for service actually rendered in the past, Anderson, *Vested Rights in Public Retirement Benefits in Pennsylvania*, 34 Temp.L.Q. 255 (1961), although the prevailing view in a majority of the states is that pension benefits are mere gratuities or expectancies which are subject to change at the whim of the munificent governmental employer.  Cohn, *Public Employee Retirement Plans—The Nature of the Employees' Rights*, 1968 U.Ill.L.F. 32.

"Pensions should not be confused with retired pay. A pension is a bounty or a gratuity given for services that were rendered in the past. . . . Retirement pay is defined as 'adjusted compensation' presently earned, which, with contributions from employees, is payable in the future."

*Retirement Board of Allegheny County v. McGovern,* 316 Pa. 161, 169, 174 A. 400, 404 (1934). The focus of the inquiry must change as the status of the employee's rights is examined. When the employee's rights are vested he is unaffected by subsequent changes. The following reference is pertinent.

"An employe who has complied with all conditions necessary to receive a retirement allowance cannot be affected adversely by subsequent legislation which changes the terms of the retirement contract."

*Harvey v. Retirement Board of Allegheny County,* 392 Pa. 421, 431, 141 A.2d 197, 203 (1958).

At the time of enactment of Act 140, July 8, 1978, both Bellomini and Cianfrani had complied with all conditions necessary, as set forth in the Retirement Code, to receive their retirement allowances and were thus eligible to receive them. Therefore, they could not be affected adversely by subsequent legislation that changed the terms of the retirement contract. *Harvey v. Retirement Board of Allegheny County, supra.*

"Until an employee has earned his retirement pay, or until the time arrives when he may retire, his retirement pay is but an inchoate right; but when the conditions are satisfied, at that time retirement pay becomes a vested right of which the person entitled thereto cannot be deprived: it has ripened into a full contractual obligation."

*Retirement Board of Allegheny County v. McGovern, supra* 316 Pa. at 169, 174 A. at 404–05 (1934).

Having established the nature of the rights involved presently, we return to the Board's argument. The Board does not, and could not, assert that the Commonwealth has the power to modify its employees' pension rights at its will and

whim. Rather, the Board claims that Bellomini and Cian-
frani have *not* complied with all conditions necessary to
receive retirement pay. As stated in *Burello v. State Em-
ployes' Retirement System, supra.* "[t]he Commonwealth
contends that the avoidance of crime related to public em-
ployment is an implicit provision of the employment contract
of any public servant and thus that retroactive act repre-
sents only a confirmation of that implicit contractual condi-
tion..." *Id.* 49 Pa.Cmwlth. at 370, 411 A.2d at 855.

In support of its position, the Board refers us to cases
from other jurisdictions which have held that faithful per-
formance of public office is an implied condition to the
receipt of a pension. *Van Coppenolle v. City of Detroit,* 313
Mich. 580, 21 N.W.2d 903 (1946); *Baltimore County Board of
Trustees v. Comes,* 247 Md. 182, 230 A.2d 458 (1967); *Ballu-
rio v. Castellini,* 29 N.J.Super. 383, 102 A.2d 662 (1954);
*State ex rel. Fox v. Board of Trustees,* 148 W.Va. 369, 135
S.E.2d 262 (1964). These cases, however, bear no analogy.
They reflect merely the interpretation of pension rights in
jurisdictions which have historically viewed those rights as
gratuities rather than as vested obligations.[1]

The Board points to no prior matter wherein a public
employee in Pennsylvania forfeited his or her retirement
pay because of a long-standing, recognized implied contrac-
tual duty of faithfulness. Consequently, we are not con-
vinced that the Board's past practice has been anything but
to enforce the contractual retirement benefits rights be-
tween the Commonwealth and its public employees, regard-
less of whether they committed wrongdoings while em-
ployed. Furthermore, the arbitrariness of December 1, 1972,
the date to which the provisions of Act 140 were made
retroactive, is further evidence that faithfulness has not
been a long-time implied contractual duty in Pennsylvania,
violation of which disqualifies a public employee from re-

1. At least one state has clarified their court's past holdings on this
   issue by stating that recent cases reflect "the thinking of an eighth
   decade-twentieth century court rather than the feudal views of a
   surrogate beneficent monarch." *City of Frederick v. Quinn,* 35
   Md.App. 626, 632, 371 A.2d 724, 727 (1977).

ceipt of retirement pay. If Act 140 were truly a codification of a long-standing and recognized contractual duty, Appellee Bellomini posits, "wouldn't the legislature have made the Act retroactive to 1930 or 1940 or 1950?"

The above discussion should not be construed as approval by this Court of appellees' behavior. Nor do we rule upon the propriety of an *express* contractual duty of faithfulness or the application of Act 140 to those whose rights had not vested prior to its enactment.

> "The question before us is not whether [they] are good or bad men, nor is it whether we would grant them annuities if we had unfettered discretion in the matter. The question is simply whether the Constitution permits Congress to deprive them of their [retirement benefits] by retroactive. . . legislation."

*Hiss v. Hampton,* 338 F.Supp. 1141, 1153 (D.C.D.C.1972).

Appellees had obviously met all of the requirements necessary to receive retirement pay. For example, Cianfrani began receiving a monthly retirement allowance prior to its termination pursuant to Act 140. This is a proper and convenient example illustrating the lack of any implied contractual duty of faithfulness, violation of which prevents qualification for retirement pay. Otherwise, the Board would not have initiated payment. If the legislature intended faithful service to be a prerequisite to receipt of retirement benefits, it could have, and should have, used appropriate language to express this intent.

We conclude that appellees have vested retirement rights, and the legislature, by retroactively denying them of their benefits, has attempted to impair its contractual obligations. This it may not constitutionally do, and therefore Act 140 is ineffective as it relates to Appellees Cianfrani and Bellomini, and all others whose retirement benefits rights had vested prior to July 8, 1978.[2]

The Orders of the Commonwealth Court are affirmed.

2. In view of our disposition of this case, we need not consider the Board's other arguments.

HUTCHINSON, J., did not participate in the consideration and decision of these cases.

NIX, J., files a concurring opinion in which McDERMOTT, J., joins.

ROBERTS, J., files a dissenting opinion in which LARSEN, J., joins.

NIX, Justice, concurring.

Prior to the enactment of Act 140 there was no legal vehicle in this Commonwealth for the forfeiture of retirement benefits of public employees. *Miller v. Commonwealth of Pennsylvania, Employees' Retirement Board*, 498 Pa. 103, 445 A.2d 88 (1981) (Nix, J., Opinion in Support of Affirmance). The retroactive application of Act 140 to the instant appellees is constitutionally forbidden and therefore cannot serve as a basis for the forfeiture of appellees' pension benefits. *Miller v. Commonwealth of Pennsylvania, Employees' Retirement Board, supra.*

The passionate plea of the dissent, although containing platitudes which all law abiding citizens unquestionably accept, fails to offer a constitutionally accepted basis for the result it urges. The enactment of Act 140 assures in the future that public officials who violate their oath of office will not receive pension benefits. Thus, the complaint of the dissent has been prospectively addressed in a manner consistent with constitutional mandates.

For these reasons, I join in the result reached by the majority today.

McDERMOTT, J., joins in this opinion.

ROBERTS, Justice, dissenting.

Today the majority proclaims that former elected public officials guilty of corruption in office are to receive, from public funds, lifetime retirement benefits of thousands of dollars each month, notwithstanding the public officials' breach of their obligation to perform their duties of office with fidelity. This decision, which awards public funds to

those who have abused their public office for private gain, at the expense of the Commonwealth's citizens whose trust has been breached, is a malignancy that attacks every principle of honesty and decency in government. I dissent.

Appellee Henry Cianfrani, former member of the State Senate and Chairman of the Senate Appropriations Committee, pled guilty to charges that, while a State Senator, he placed "ghost" employees on the Senate payroll, and accepted bribes to exert his influence as a Senator upon state-funded schools in favor of candidates for admission. In all, appellee pled guilty to 110 federal offenses, including one count of racketeering, 101 counts of mail fraud, four counts of obstruction of justice, and four counts of income tax evasion. Appellee Robert Bellomini, former member of the State House of Representatives and Chairman of the House Transportation Committee, was found guilty of the charge that, while in office, he extorted $5,000 from two companies seeking contracts with the Pennsylvania Liquor Control Board for the storage, handling, and delivery of liquor shipments for northwestern Pennsylvania. Both appellees were sentenced to terms of imprisonment.

Appellees have already received a return of all contributions which they made to the retirement system. Thanks to the majority's decision, appellee Cianfrani will also receive approximately $910 of public funds per month for the rest of his life. Appellee Bellomini will receive approximately $750 of public funds per month for the rest of his life. Additionally, both will receive comprehensive lifetime health care coverage, to be paid from public funds.

The majority's decision to award retirement benefits to appellees despite their crimes in office reaches far beyond the facts of these cases. The decision will serve to confer substantial benefits on several other convicted public officials whose claims to entitlement to full retirement benefits are presently pending before this Court.* Even more dis-

---

* See *Burello v. State Employees' Retirement Board*, No. 80-2-317; *Heller v. State Employees' Retirement Board*, No. 80-3-634; *Shelton v. State Employees' Retirement Board*, No. 80-2-287; *Miller v. State*

turbing is the majority's pronouncement that it is now constitutionally impermissible for the Commonwealth's legislative and executive branches to withhold publicly funded retirement benefits from those public servants convicted of governmental corruption. Because the majority has grasped for constitutional grounds to support its result, the majority has immunized public employees convicted of dishonesty in office from legislative control. Like appellees, members of the majority's special class would receive full retirement benefits, despite their crimes.

The majority's creation of a class of public employees unaccountable to the citizens of the Commonwealth for a breach of the duty to perform faithfully is the height of unreason and irresponsibility. For inherent in common decency and honest government is the absolute prohibition against the use of public money to reward with lifetime pensions former public officials convicted of dishonesty and corruption in governmental service. Indeed, this Court has consistently recognized the relationship between faithful performance and the right to retirement benefits. More than four decades ago, this Court stated:

> "The various retirement acts adopted in this Commonwealth ... have as their purpose, not the bestowal of a gratuity upon governmental officeholder, but compensation for extended and *faithful* services performed, and to be performed, on behalf of the governmental body and the public."

*Haldeman v. Hillegass*, 335 Pa. 375, 385–86, 6 A.2d 801, 808 (1939). Accord, *Rockwell v. York County Retirement Board*, 405 Pa. 406, 413, 175 A.2d 831, 835 (1961); *David v. Veitscher Magnesitwerke Actien Gesellschaft*, 348 Pa. 335, 342, 35 A.2d 346, 349 (1944). We have recognized that the basis of

*Employees' Retirement Board*, No. 80–2–277 (J. 8 of 1981, petition for reargument pending); *Fineman v. State Employees' Retirement Board*, No. 80–2–278 (J. 8 of 1981, petition for reargument pending). The lifetime benefits to be paid from public funds to Fineman alone total $1876.23 per month. See *Fineman v. State Employees' Retirement Board*, 498 Pa. 103, 112 n.*, 445 A.2d 88, 92 n.* (1981) (Roberts, J., joined by Larsen & Kauffman, JJ., in support of reversal).

retirement benefits "is neither charitable nor benevolent; they are founded on *faithful,* valuable services actually rendered to the Commonwealth over a long period of years...." *Busser v. Snyder,* 282 Pa. 440, 454, 128 A. 80, 85 (1925). "[T]he government and municipalities are interested in the *faithful* and effective discharge of duty by public servants .... [A] fund judiciously administered is an effective way to secure service of the highest type." *Retirement Board of Allegheny County v. McGovern,* 316 Pa. 161, 169, 174 A. 400, 405 (1934) (emphasis added).

By directing the payment of full retirement benefits, the majority effectively grants specific performance to appellees of a "contract" steeped in appellees' own criminality. Until today, in no area of the law has specific performance been granted to a party who has tainted the contract with illegality.

The law of Pennsylvania has long embraced the common-law rule that one in the private sector who has breached a duty to discharge his responsibilities with fidelity is subject to a forfeiture of compensation. See, e.g., *Peniston v. John Y. Huber Co.,* 196 Pa. 580, 46 A. 934 (1900) (properly discharged agent "forfeited by his misconduct" any claim to final lump-sum payment pursuant to employment contract); *Weinstein v. Union Trust Co. of Pittsburgh,* 313 Pa. 280, 169 A. 101 (1933) ("faithless" trustee " 'forfeited the right to any compensation, whether as commissions or otherwise' "). Accord, Restatement (Second) of Trusts § 243 (1959); Restatement (Second) of Agency § 456 (1958). Such a forfeiture "is not in the nature of an additional penalty for the breach of trust ...." Rather, forfeiture is based upon the fact that the breaching party "has not rendered or has not properly rendered the services for which compensation is given." Restatement (Second) of Trusts, supra, at Comment a.

Surely appellees are subject to no lesser standard than persons in the private sector who have breached an obligation to discharge their duties with fidelity. As public officials, appellees unquestionably were "bound to perform with fidelity." *Commonwealth v. Evans,* 74 Pa. 124, 140 (1873)

(public officer entrusted with receipt of public money subject to forfeiture of commissions for failure to account). Indeed, upon their commencement of public service as legislators, appellees took the following oath of office:

"I do solemnly swear that I will support, obey and defend the Constitution of the United States and the Constitution of this Commonwealth and that I will discharge the duties of my office with fidelity."

Pa.Const. art. VI, § 3. Where, as here, a public official has breached the obligation to perform his duties with fidelity, and abused the trust of his office for personal gain, the breaching official has no right to retirement benefits.

The majority not only ignores the prior decisions of this Court but also rejects out of hand the decisions of other jurisdictions which have held faithful performance to be an implied condition of eligibility for retirement benefits. The theory that "historically" these jurisdictions have deemed pension rights to be "gratuities," rather than "vested obligations" as in Pennsylvania, cannot withstand analysis. In reaffirming the view that a public servant is impliedly obliged to have rendered faithful performance as a prerequisite to the receipt of retirement benefits, the Supreme Court of New Jersey recently made clear that the concept of "vesting" is an integral part of New Jersey law. *Masse v. Public Employees' Retirement System*, 87 N.J. 252, 432 A.2d 1339 (1981). The Court of Special Appeals of Maryland has observed that the requirement of faithful performance "is language of contract law. It does not comport with the arbitrary right of unilateral withdrawal upon which the gratuity principle is founded." *City of Frederick v. Quinn*, 35 Md.App. 626, 632, 371 A.2d 724, 727 (1977). And in *State ex rel. Fox v. Board of Trustees*, 148 W.Va. 369, 135 S.E.2d 262 (1964), where the Supreme Court of West Virginia recognized the implied obligation of faithful performance, the Court stated that a public employee's right to a pension plan "vests" only upon the performance of all conditions of eligibility. 148 W.Va. at 373, 135 S.E.2d at 264.

Thus the requirement of faithful performance expressed in the Forfeiture Act cannot be dismissed as incompatible

with the concept of "vesting" embodied in Pennsylvania law or as ex post facto legislation. To the contrary, the Forfeiture Act codifies the time-honored, common-law condition of faithful performance which, like other conditions such as age and years of service, a holder of public office has always been obliged to satisfy to become eligible for retirement benefits. As this condition would apply to all public officials even if it had not been codified by statute, the Forfeiture Act has in no respect abridged the Constitutions of the United States or of this Commonwealth. Rather, the majority has abridged the unquestionable authority of the Legislature to codify a longstanding and salutary principle of the common law, a principle essential to a responsible and accountable system of government.

It is a sad day, indeed, when a majority of this Court accords to public officials convicted of governmental corruption retirement benefits that are rightfully accorded only to faithful, honest public servants. By refusing to distinguish between those with honorable and those with dishonorable service, the majority erects, at public expense, a monument to personal greed and corruption in public office which affronts all the faithful public servants and taxpaying citizens of the Commonwealth. This shameful monument should not be permitted to stand.

LARSEN, J., joins in this dissenting opinion.