639 A.2d 875

**In re Audit of Campaign Expense Statements, Election Reports and Affidavits Required to be Filed with the Northampton County Election Board Pertaining to the May 21, 1991 Election of Upper Mount Bethel Township, Northampton County, Pennsylvania.**

**Appeal of Ronald ANGLE, Alfred Dahl et al., Appellants.**

Commonwealth Court of Pennsylvania.

Submitted Nov. 17, 1993.

Decided March 10, 1994.

432

Brian M. Monahan, for appellants.
Gary Neil Asteak, for appellees.

Before CRAIG, President Judge, COLINS, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

KELLEY, Judge.

Eight registered electors of Upper Mount Bethel Township (Electors) appeal from an order of the Court of Common Pleas of Northampton County (trial court) dismissing their election audit appeal.[1]

In May 1991, a primary election was held in Upper Mount Bethel Township, Northampton County, Pennsylvania, for the purpose of electing Republican and Democratic candidates for two township supervisor positions. Sections 1625, 1626, 1626.1 and 1627 of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333 (Election Code), *as amended,* 25 P.S. §§ 3245, 3246, 3246.1 and 3247, relate to filing requirements for candidates, political committees and lobbyists of election campaign receipts and/or expenditures. Of the nine candidates, only one campaign committee, representing two candidates, and two individual candidates filed campaign expense statements with the Northampton County Board of Elections. Other campaign expense statements were filed by "lobbyists".

On September 17, 1991, the Electors filed a petition for audit of campaign expense statements, election reports and affidavits, pursuant to section 1636(a) of the Election Code, 25 P.S. § 3256(a).[2] The petition requested that the court audit

1. This appeal was originally argued before a three judge panel of this court. By order dated June 24, 1993, this appeal was directed on briefs before the court en banc and submitted on November 17, 1993.

2. Section 1636(a) of the Election code reads:

(a) Within ninety (90) days after the last day for filing any report and affidavit required by this act, any five (5) electors of the Commonwealth or of the political division may present a petition to the court of common pleas of the county in which is situated the office where such original report has been filed or with the Commonwealth Court in the case of original report filed with the Secretary of the Commonwealth for an audit of such report. Thereupon the court shall direct the officer or board with whom such report has been filed to certify the same to the court for audit and may, in its discretion, require security to be entered for costs. The court may, in its discretion, appoint an auditor to audit such report, but the fees of such auditor shall be a reasonable sum per day for each day actually

the campaign contributions, election expenses and reports filed by thirteen people involved in the primary election.

At the initial hearing on October 16, 1991, the trial court ordered the expense accounts certified and scheduled an audit hearing for the non-jury trial list during January 1992.

One of the individuals named in the audit petition as having failed to file an expense statement petitioned for the appointment of an auditor and also petitioned that Electors be required to file security for costs pursuant to section 1636(a) of the Election Code. On November 8, 1991, the trial court denied this petition with respect to an appointment of an auditor without prejudice to any party to petition for reconsideration upon a showing of the financial issue. In addition, the trial court denied the petition to require security for costs without prejudice.

However, the trial court *sua sponte* scheduled another hearing to reconsider its order of November 8, 1991 and, after that hearing, reversed its position. By order dated November 11, 1991, the trial court required the Electors to post security in an amount not less than $15,000.00 and appointed an auditor, Michael P. Shay, Esq., setting his compensation at $800.00 per day ($100.00 an hour for eight hours work per day) for each day that he was actually engaged in the audit. Thereafter, Electors sought reconsideration of the trial court's decision or, in the alternative, permission to appeal the court's interlocutory order; both requests were denied.

engaged. The court or auditor shall fix a day as early as may be convenient for the audit, at which time the person by whom such report has been filed shall be required to be present in person to vouch his report and to answer on oath or affirmation all such relevant questions concerning the same, as may be put to him by the petitioners or their counsel. The auditor shall issue subpoenas to all parties whom the petitioners or the filer of the report may require, to give evidence concerning such report, and he shall determine, subject to exception, all questions as to the admissibility of evidence, and shall file a copy of the evidence with his findings. If upon the audit, the court shall decide that the report was false in any substantial manner, or that any expenses have been incurred in contravention of this act, the costs of said audit shall be paid by the filer of the report, otherwise the court shall make such order as to payment of costs as shall be just in the circumstances.

On January 14, 1992, the trial court heard the appellees' motion to dismiss the audit appeal. At the hearing on this motion, one Elector presented testimony to the effect that some of the eight Electors could not afford their share of the security. The trial court held that the failure of the Electors to testify as a group, as to why they could not afford to post their shares of the bond with a suitable insurance company, coupled with the fact that the single witness who did testify, Ronald Angle, admitted that he was able to afford his share, but had not posted it, rendered the testimony of the electors incredible. The trial court dismissed the Electors' petition for reconsideration and dismissed the petition for audit for failure to prosecute. (Trial ct. op. at 5.) Electors appealed to this court.

■ On appeal,[3] Electors raise the following issues:

1. Whether the trial court abused its discretion in requiring Electors to post a bond in the amount of $15,000.00;

2. Whether the trial court abused its discretion in establishing compensation in the amount of $800.00 per day for services of an auditor;

3. Whether the trial court abused its discretion in appointing an auditor to take testimony and to determine issues of credibility pursuant to section 1636(a) of the Election Code; and

4. Whether the trial court order of November 22, 1991 violated Electors right to due process and equal access to the courts as afforded by the United States Constitution and the Pennsylvania Constitution.

This court will address the first three issues raised by Electors *in seriatim*. Electors argue that the trial court abused its discretion by appointing an auditor in the first place because the expertise of an auditor is not necessary. Even if the appointment of the auditor were to be upheld, they contend that the amount of compensation is too high and that

**3.** Our scope of review is whether the trial court committed an abuse of discretion or an error of law. *Mirror Printing v. Altoona School Board,* 148 Pa.Commonwealth Ct. 168, 609 A.2d 917 (1992).

the bond requirement is arbitrary, capricious and confiscatory. Those to be audited counter that the trial court acted within its statutory mandate and did not abuse its discretion.

We begin our analysis by reiterating the principle enunciated by our Supreme Court: The Election Code should be liberally construed to carry out the evident legislative intent that expense accounts of candidates for public office be subject to closest scrutiny. *In re Shapp*, 476 Pa. 480, 383 A.2d 201 (1978). Rather than liberally interpreting the Election Code in favor of the Electors as audit petitioners to carry out this legislative intent, the trial court balanced the interest of the various parties stating:

> [W]e have carefully considered the interests of the audit petitioners in access to the Court, and the interest of the public in elections free of fraud.... Further, we have considered the interest of the targets of the audit, including the chilling effect that outstanding litigation may have on the exercise of authority by the individual who received the plebiscite. In addition, we have considered the interest of the public in seeing that those whom they have elected be allowed to serve without undue interference. Having balanced all these interests, we conclude that the mischief arising from the delay of justice outweighs objection to security of costs.[4]

(Trial ct. op. at 5.)

The trial court erred by concerning itself with the interests of the targets of the audit rather than the paramount interest of the public to an election free of fraud. However, this error was harmless in that it did not infect the trial court's determination on the specific issues raised by this appeal.

4. The trial court indicated a concern with concluding the audit before the elected officials assumed their offices. However, a thorough investigation should not be sacrificed for a speedy determination. The audit does not preclude those elected from taking office. Even after they take office, the trial court can impose an appropriate remedy if it concludes that the Election Code was violated. Any delay occasioned by the trial court's schedule or these audit proceedings should not be visited upon the Electors who filed a timely petition seeking the campaign audit.

■ First, section 1636(a) of the Election Code, 25 P.S. § 3256, clearly confers the trial court with discretion to appoint an auditor subject only to the proviso that the fees be reasonable. The trial court explained in its opinion dismissing the Electors audit petition that he appointed an auditor to speedily conduct the requested audit as prior scheduling commitments made it impossible for the trial court to complete hearings on the audit in a timely manner. Clearly such appointment by the trial court was consistent with the letter and spirit of the Election Code. As the trial court pointed out, the language of section 1636(a) requires the trial court to "fix a day as early as may be convenient for the audit." 25 P.S. § 3256(a). Therefore, the trial court did not abuse its discretion in appointing an auditor in the present case.

■ Second, Electors contend that the auditor's role is limited to financial issues requiring the expertise of an auditor. Such interpretation is contrary to the clear language of section 1636(a) of the Election Code requiring an auditor to issue subpoenas, to determine questions concerning the admission of evidence and to file a copy of the evidence with the findings. 25 P.S. § 3256. We note that the purpose of the audit procedure is not only to determine whether the candidates' returns are mathematically correct but also to determine whether any person has accepted campaign contributions in contravention of the Election Code. *Cole v. Evanina*, 139 Pa.Commonwealth Ct. 219, 590 A.2d 72 (1991).

■ While the trial court has the discretion to appoint an auditor under the Election Code, the "fees for such auditor shall be a reasonable sum per day for each day actually engaged." 25 P.S. § 3256(a). Electors contend that the $800.00 per day fee required by the trial court as compensation for the auditor was extremely unreasonable.

Our Supreme Court in a different type of case, *Lewis Estate*, 349 Pa. 455, 37 A.2d 559 (1944), expressed the applicable maxim that an "auditor's fee is measured by the character and volume of the work done, the nature and difficulty of the question involved, the time necessarily required, and similar

elements." *Id.* In the present case, the trial court explained that the auditor's daily fee of $800.00 per day was reasonable in view of the usual hourly rates in Northampton County, the complexity and novelty of the issues involved, and the time limits imposed. (Trial ct. op. at 3.) We agree with the trial court that the auditor's fee was reasonable and that the trial court's determination of the fee was in keeping with the maxim set forth by our Supreme court in *Lewis.*

The duties of the auditor in this case involved examining the campaign accounts, preparing a complex report, and taking the testimony of several witnesses over a short period of time. Accordingly, the trial court did not abuse its discretion in setting the auditor's fee at $800.00 per day.

Next, Electors contend that the security set by the trial court in this case was inordinately high. We disagree.

The auditor's fee and the stenographer's fee are costs associated with an audit under the Election Code and the trial court, may in its discretion, require security to be entered for such costs. 25 P.S. § 3256(a). In requiring that the Electors post $15,000.00 as security for costs the trial court considered the number of witnesses to be called, the hundreds of pages of transcription by the stenographer, the extensive attention the legal issues would require, and the time required to produce a timely audit report. (Trial ct. op. at 4.)

This court believes that the trial court did not abuse its discretion in considering the aforementioned factors in requiring the posting of security or in setting the amount at $15,-000.00. On the contrary, the trial court's examination of such factors indicates that the trial court exercised its discretion properly.

The final issue raised by Electors is whether the trial court by its order of November 22, 1991, appointing an auditor, setting the auditor's fee, and requiring the entry of security, violated Electors' right to due process and equal access to the courts. Notably, Electors do not argue that the Election Code is unconstitutional, but appear instead to argue

that the trial court's implementation of the Election Code violated their constitutional rights.

Electors initially requested the trial court to conduct an audit of expense accounts in accordance with section 1636 of the Election Code without requiring security for costs. *See* Reproduced Record at 1a–14a. Electors cannot deny that under the very section of the Election Code that they requested an audit that the trial court is vested with the authority to appoint an auditor and require security for costs. This specific procedure for conducting an audit by a court-appointed auditor and bond has been statutorily authorized by the state legislature and this court has already determined that the trial court properly followed the applicable procedure.

Therefore, in light of this court's determination that the trial court did not abuse its discretion by appointing an auditor, setting the auditor's fee and requiring security for costs, we hold that the trial court's order of November 22, 1991 did not violate Electors' constitutional rights under the United States Constitution or the Pennsylvania State Constitution.

Accordingly, the order of the trial court dismissing Elector's petition for an audit of expense accounts for failure to prosecute is affirmed.

### ORDER

NOW, this 10th day of March, 1994, the order of the Court of Common Pleas of Northampton County, dated February 19, 1992, at No. 1991–CM–8113, is hereby affirmed.

SMITH, Judge, dissenting.

I dissent from the majority decision in this case. Appellants' request before the trial court was not a complicated one. They merely challenged certain individuals' reporting of campaign expenditures as "lobbyists" rather than as a "political committee" which received contributions or made expenditures for purposes of the May 1991 primary election for Upper

Mount Bethel Township, Northampton County, township supervisor positions.

Appellants petitioned for audit of campaign expense statements, election reports and affidavits pursuant to Section 1636 of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 3256, and sought a determination by the trial court concerning the reports filed by 13 individuals involved in election activities. The petition averred that certain individuals engaged in a concerted effort to avoid strict reporting requirements of the Election Code by identifying themselves as lobbyists when in fact they acted as a political committee. The trial court denied Appellee's request for the appointment of an auditor to determine the strictly legal question presented and stated the court would not burden taxpayers or anyone else with unnecessary expenditures and that an auditor was unnecessary from the court's understanding of the issue. Upon reconsideration of its decision, the court granted Appellee's request for appointment of an auditor, set compensation at $800 for each day engaged in the audit, and required that Appellants post security of $15,000.

The question presented involves a narrow interpretation of the facts which should properly be developed at a hearing before the trial judge who should thereafter determine the legal issue presented by those facts—were certain individuals in fact acting as lobbyists or were they acting together as a political committee. In *Cole v. Evanina*, 139 Pa.Commonwealth Ct. 219, 590 A.2d 72 (1991), relied upon by Appellee, the question did not involve the legal status of individuals acting on behalf of a particular candidate but rather whether a political committee accepted contributions, incurred expenditures, and expended or disbursed funds in contravention of the Election Code. The audit in *Cole* dealt with the review of a political committee expense report filed by the committee and whether the report was in fact complete.

Nothing in this case requires the services of an auditor much less one at $800 per day and the consequent posting of a $15,000 bond by Appellants. The role of an auditor acting pursuant to the Election Code is that of a financial investiga-

tor and is unnecessary here. Therefore, the trial court abused its discretion in ordering the appointment of an auditor and this case should be remanded to the trial court to conduct a hearing and decide the legal issue presented.

CRAIG, President Judge, joins in this dissent.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. I do not believe that the trial court's error in concerning itself with the interests of the targets of the audit rather than the paramount interest of the public to an election free of fraud was harmless error. Rather, that error infected the court's reasoning in setting the auditor's daily fee, in requiring a $15,000.00 security deposit and in determining that appellants' failure to post a bond for the security constituted a failure to prosecute.

The Election Code should be liberally construed to carry out the legislative intent that expense accounts of candidates for public office be subject to closest scrutiny. *In re Shapp,* 476 Pa. 480, 383 A.2d 201 (1978). Rather than liberally interpreting the Code in favor of the audit petitioners to carry out this legislative intent, the trial court balanced the interests of the various parties, and "[h]aving balanced all these interests, conclud[ed] that the mischief arising from the delay of justice outweigh[ed] objection to security of costs."[1] (Trial ct. op. at 5.) The trial court's error affected its resolution of the issues in this case.

As noted by the majority, the trial court's authority to appoint an auditor is discretionary, subject to the provision: "The fees for such auditor shall be a reasonable sum per day for each day actually engaged." Section 1636 of the Code, 25

1. The trial court indicated a concern with concluding the audit before the elected officials assumed their offices. However, a thorough investigation should not be sacrificed for a speedy determination. The audit does not preclude those elected from taking office. Even after they take office, the court can impose an appropriate remedy if it concludes that the Election Code was violated. Any delay occasioned by the court's schedule or these audit proceedings should not be visited upon the electors who filed a timely petition seeking the campaign audit.

P.S. § 3256.[2] Unlike the majority, I cannot concede the legitimacy of the $800.00 *per diem* rate set by the court. The trial judge has the discretion to appoint the auditor, whether an attorney or another person. If an attorney is appointed, however, the auditor need not be paid at the rate for attorneys in private practice. In this case, the trial court based the auditor's reimbursement on the "normal hourly wage for attorneys familiar with trial work in Northampton County." (R.R. at 113a.) While it is not our function to act as a factfinder to set an appropriate level of compensation, I believe that the trial court erred in using the usual hourly rate for trial attorneys to determine a reasonable fee for someone appointed to audit campaign reports. In the event that no attorney is willing to serve at an appropriate rate, nothing prevents the trial judge from appointing someone else or from personally conducting the audit.

The majority quotes the maxim expressed by our Supreme Court in *In re Lewis' Estate,* 349 Pa. 455, 37 A.2d 559 (1944) that an "auditor's fee is measured by the character and volume of the work done, the nature and difficulty of the question involved, the time necessarily required, and similar elements." *Id.* at 462, 37 A.2d at 563. However, the majority ignores two subsequent cases which refer to this section of the *Lewis* opinion. In *In re Estate of Vaughn,* 315 Pa.Superior Ct. 354, 461 A.2d 1318 (1983), the court downgraded an initial auditor's fee of $40.00 an hour (as assessed by the auditor himself) to $35.00 an hour, in order "to bring it into line with the hourly rate paid specially appointed public defenders in Juniata County." *Id.* at 362, 461 A.2d at 1322. What is striking (even allowing for the effects of a decade's worth of inflation between the time of the *Vaughn* holding and the present), is not only that this figure is approximately one-third of the *per diem* rate in the case before us but also that the court used a standard (that of the compensation paid to specially appointed public defenders) applicable to private

2. Furthermore, section 1636 of the Code, 25 P.S. § 3256, provides that the court "may, in its discretion, require security to be entered for costs."

attorneys serving on a public matter. The other case relying on *Lewis, Estate of Allen,* 488 Pa. 415, 412 A.2d 833 (1980), allowed for an auditor's fee of approximately $35.00 per hour which the court conceded "might seem a little high." [3]

I see no basis in case law for the *per diem* rate in this case: the function of the auditor here is similar to but less than that of jurors or referees who serve as both factfinders and adjudicators; in some estate cases where the issue has been the appropriate payment for an auditor, the fees have been based on those paid to public defenders. Because the responsibility of the auditor here is as factfinder, these considerations of an appropriate fee for services are applicable. Accordingly, establishing a fee for the auditor at the usual rate for attorneys in private practice is inappropriate and inconsistent with the legislative intent and would have a chilling effect on the ability of electors seeking audits to provide close scrutiny of candidates' expenses.

While the setting of reasonable fees is for the factfinder, the determination of what is reasonable is for this court. I believe that the range of fees paid to citizens performing the types of functions noted above provides a guideline as to the parameters of what fees would be reasonable.

Next, I agree with the Electors that the security set by the trial court is inordinately high. The purpose of security is to have sufficient monies available to pay the eventual fees. Even at the rate deemed appropriate by the court and even considering both the auditors and stenographer's fees, $15,000.00 is disproportionate to this purpose.

Because I would find the amount of the compensation and of the security required excessive, I would not sustain the trial court's determination that the appellants' failure to post a bond with the insurance company constituted a failure to

---

**3.** The total amount was $19,175.00 for work stretching over a 97 day period between the auditor's appointment and the filing of his account on a bitterly contested legacy disputed by three brothers. A 97 day period would encompass 70 business days, which in turn would yield a daily compensation rate of approximately $270.00, i.e. almost exactly the $35.00 per hour rate (allowing for eight hours to the day) set forth in *Vaughn.*

prosecute on their part. Rather, I would vacate the order of February 19, 1992 and remand this matter to the trial court for reconsideration of the amount of both the *per diem* compensation and the security to be posted, with an instruction that the amount of the *per diem* compensation rate and the security bond be reduced to a reasonable amount. Such a resolution would facilitate the posting by the electors of reasonable security and would be consistent with the legislative intent that the expense accounts of candidates for public office be subject to close scrutiny.

Accordingly, I respectfully dissent.