590 A.2d 72

Terry A. COLE; George W. Meadows;
Bessie L. Meadows; Norma J. Lebder;
and Fred L. Lebder, Petitioners,

v.

Charles EVANINA, President, of the Concerned Citizens
of Fayette County and the Concerned Citizens of
Fayette County, Respondents.

Terry A. COLE; George W. Meadows;
Bessie L. Meadows; Norma J. Lebder;
and Fred L. Lebder, Petitioners,

v.

Carmine MOLINARO, Jr., and the Carmine Molinaro
Campaign Committee, Respondents.

Commonwealth Court of Pennsylvania.

Argued Oct. 1, 1990.

Decided April 17, 1991.

Mark F. Morrison, Morrison and Cline, Uniontown, for petitioners.

Charles F. Scarlata, Scarlata & Plastino, Pittsburgh, for respondents.

Before COLINS and PALLADINO, JJ., and CRUMLISH, Jr., Senior Judge.

## OPINION

CRUMLISH, Jr., Senior Judge.

Before us are the consolidated exceptions of Terry Cole, et al., registered electors of Fayette County (Cole), to the auditor's reports covering the campaign expense reports of (1) Charles Evanina (Evanina) and the Concerned Citizens of Fayette County (Evanina Committee); and (2) Carmine Molinaro, Jr. (Molinaro) and the Carmine Molinaro Campaign Committee (Molinaro Committee).

A hearing was scheduled by the court appointed auditor, Carl W. Brueck, Jr. (Auditor), on January 27, 1990 and it was agreed by counsel for Cole and both respondent committees that hearings on both reports would be held at the same time, but separate findings on each would be made by the Auditor. First, we will address the petition at No. 270 M.D.1989, on the Evanina Committee report, followed by review of the exceptions to the Auditor's report at No. 271 M.D.1989, on the Molinaro Committee reports.

*No. 270 M.D.1989*

Pursuant to Section 3256 of the Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 3256 (Election Code),[1] the Auditor was appointed to report on the acceptability of accounting records and statements filed by the Evanina Committee covering the period January 1, 1989 to December 31, 1989. Cole, who filed the petition for audit, alleged that the Evanina Committee unlawfully made contributions to Molinaro's campaign for judge of the Fayette County Common Pleas Court.

The Auditor received a campaign expense report, certified from the Commonwealth Bureau of Commissions, Elections and Legislation, which evidenced "zero" receipts and "zero" expenditures by the Evanina Committee.

Cole argues that, pursuant to Section 3246(g) of the Code,[2] the Evanina Committee was required to file an expense report for expending over one-hundred dollars in advocating the election of Molinaro. Cole maintains that since Evanina and his group are not a political action committee and allowed their names to appear on a newspaper advertisement costing over one-hundred dollars, they should have filed an expense report.

Evanina testified that he was the president of the Concerned Citizens of Fayette County. He testified that neither he nor his committee placed the newspaper advertise-

1. Jurisdiction lies in the Commonwealth Court pursuant to Section 3256 of the Election Code. 25 P.S. § 3256.

2. Section 3246(g), 25 P.S. § 3246(g), provides:
   Every person, other than a political committee or candidate, who makes independent expenditures expressly advocating the election or defeat of a clearly identified candidate, or question appearing on the ballot, other than by contribution to a political committee or candidate, in an aggregate amount in excess of one hundred dollars ($100) during a calendar year shall file with the appropriate supervisor, on a form prepared by the Secretary of the Commonwealth, a report which shall include the same information required of a candidate or political committee receiving such a contribution and, additionally, the name of the candidate or question supported or opposed.

ment in this case,[3] and that he personally knew nothing about its payment. Evanina denied ordering or paying for the advertisement, and there was no testimony adduced to contradict these statements.

The Auditor found no evidence that the Evanina Committee received any income or expended any money on behalf of the Molinaro campaign. The only record kept by the Evanina Committee was a bank statement which showed a two-hundred-and-ninety dollar balance, and only one twenty-five dollar check for an expense not involving the Molinaro campaign.

In view of the fact that there was no evidence which would support a finding that the Evanina Committee either placed or paid for an advertisement for the Molinaro campaign, the Auditor recommended dismissal of Cole's petition to reject the Evanina Committee report, and suggested that Cole bear the costs of this audit.[4] We agree.

### No. 271 M.D.1989

The Pennsylvania Bureau of Commissions, Elections and Legislation provided the Auditor with pre and post-election expense reports of the Molinaro Committee. These reports covered the period January 1, 1989 to June 5, 1989.

In his exceptions to the audit of these reports, Cole contends that that Committee accepted contributions, incurred expenses, and expended or disbursed money in contravention of the Election Code. Cole asserts that the Molinaro Committee's expense report for the May 16, 1989

3. The advertisement endorsing Molinaro included a notation at the bottom that read, "Paid for by the Concerned Citizens of Fayette County."

4. Code Section 3256(a), 25 P.S. § 3256(a), provides in pertinent part: If upon the audit, the court shall decide that the report was false in any substantial manner, or that any expenses have been incurred in contravention of this act, the costs of said audit shall be paid by the filer of the report, *otherwise the court shall make such order as to payment of costs as shall be just in the circumstances.* (Emphasis added.)

county primary election was incomplete, vague, ambiguous and presented the appearance of impropriety.

The Election Code must be liberally interpreted to carry out the evident legislative interest that expense accounts of candidates for public-office must be subject to close scrutiny, but the interpretation of any section of the Election Code must be based on, and necessarily limited by, the words used to express that intent. *In re Shapp*, 28 Pa.Commonwealth Ct. 163, 368 A.2d 858 (1977). Our Supreme Court has held, in *Brunwasser v. Fields*, 487 Pa. 283, 288–89, 409 A.2d 352, 354 (1979), that:

> The audit is the instrument that triggers the enforcement mechanism of the Election Code. The scope of these audits is not limited to whether the candidate's return is arithmetically correct; but extends to a determination of whether *"any person,* whether a candidate or not, has *accepted contributions* or *incurred expense* or *has expended or disbursed money in contravention of this act,* or has otherwise violated *any* of the provisions of this act." (Emphasis added.) (Citation omitted.)

Here, Cole contends that an audit would show the Molinaro Committee committed acts in contravention of the Election Code. The Auditor found to the contrary.

Cole initially contends that the unitemized advertising agency invoices in the Molinaro Committee expense report violated Section 3246(b)(4) of the Election Code, 25 P.S. § 3246(b)(4), which requires that each report include every expenditure, the date made, to whom it was made and the purpose for such expenditure.

The Auditor found that Molinaro paid one invoice from Casey and Company, for campaign advertisements, which covered payments for various ads and television spots placed by Casey and Company. Casey and Company did not submit individual invoices for each advertising spot. Although numerous print and media ads were placed, they were paid for as a package, with a single expenditure by the

Molinaro Committee. The invoice for this expenditure was included in the Committee's report.

Cole avers next that the Molinaro Committee's 1989 report is incomplete because it failed to carry over unpaid debt from the 1987 and 1988 reports, as required by Section 3246(b)(5).[5] The Auditor sustained the Molinaro Committee's objections pertaining to the 1987 and 1988 pre- and post-election reports since Cole's petition only sought an audit of the 1989 reports.

As to the lack of debt carry-over in these reports, Regina Gallo, treasurer of the Molinaro Committee, testified that she prepared the reports and believed each report covered only activities within the time frame of that report. She also testified that any discrepancy as to carry-over debt would be rectified in the Molinaro Committee's annual report,[6] which was not filed at the time of the Auditor's hearings.

Cole argues, however, that the Auditor improperly permitted Gallo's hearsay testimony about the advice she was given by the Elections Bureau on how to complete the reports. Ms. Gallo testified that she prepared the reports and they were correct to the best of her knowledge. She testified as to what she *thought* were the proper procedures regarding expense reports, after having spoken with election officials. (Notes of Testimony, 1/27/90, pp. 58–60). In making his findings, the Auditor did not rely on Gallo's

5. Code Section 3246(b)(5), 25 P.S. § 3246(b)(5) provides in pertinent part:
   (b) Each report shall include the following information:
   (5) Any unpaid debts and liabilities, with the nature and amount of each, the date incurred and the full name and address of the person owed.

6. Code Section 3247(a), 25 P.S. § 3247(a), requires:
   (a) All political committees and candidates ... shall file a report on January 31 of each year which shall be complete as of December 31 of the prior year. Such reports shall be filed annually at this time until there is no balance or debt in the report of the candidate or political committee. Such reports shall be cumulative.... In the case of annual reports said report shall cover the campaign activity of a candidate or political committee from the last prior report or statement.

testimony on the information she received from the elections bureau. Thus, we perceive no hearsay problem.

The Auditor found that the 1987 and 1988 reports were not for him to review, and since the Molinaro Committee had not yet filed a 1989 annual report, any alleged discrepancies in the reporting of carry-over debt could be rectified in that report. The Auditor further found that Cole did not petition for an audit of that annual report, which he clearly had a right to do under Section 3256.[7] Instead, Cole sought an audit of the Committee's pre and post-election expense reports from January 1, 1989 through June 5, 1989. The Auditor, therefore, concluded that since the Committee's 1989 annual report had not been filed at the time of the hearing, potential irregularities in the Committee's pre and post-election reports could be rectified in its 1989 annual report. The Auditor acted within his discretion by reserving any ruling on the 1989 annual report, since it was not filed and not the subject of this audit.

Cole next argues that the Molinaro Committee violated Sections 3258(a)(1) and (2)[8] by placing a newspaper

7. Code Section 3256(a), 25 P.S. § 3256(a), provides in pertinent part: Within ninety (90) days after the last day for filing *any report* and affidavit required by this act, any five (5) electors of the Commonwealth or of the political division *may present a petition to the court of common pleas* of the county in which is situated the office where such original report has been filed *or with the Commonwealth Court* in the case of original report filed with the Secretary of the Commonwealth *for an audit of such report.* Thereupon the court shall direct the officer or board with whom such report has been filed to certify the same to the court for audit.... (Emphasis added.)

8. Code Section 3258(a), 25 P.S. § 3258(a), provides in pertinent part: (a) Whenever *any person* makes an expenditure for the purpose of financing communications expressly *advocating the election or defeat of a candidate,* or ballot questions, through any broadcasting station, newspaper, ... such communication:
(1) If authorized by the candidate, his authorized political committee or their agents, *shall clearly and conspicuously state that the communication has been authorized.*
(2) If not authorized by a candidate, his authorized political committee, or their agents, *shall clearly and conspicuously state the name of the person who made or financed the expenditure* for the communication.... (Emphasis added.)

advertisement endorsing Molinaro with a notation at the bottom that read "Paid for by the Concerned Citizens of Fayette County." (Petitioner's Exhibit A, 1/27/90). Molinaro testified that the notation was mistakenly placed in the advertisement by the advertising company, and a retraction and explanation were subsequently effectuated. The Auditor accepted Molinaro's testimony as credible, and since he received no evidence to the contrary, he properly concluded that no violation occurred.

Finally, Cole contends that the Molinaro Committee violated Section 3248 of the Election Code, because it received over forty-thousand dollars in late contributions, after filing its pre-election report, and failed to report such contributions. (Notes of Testimony, 1/27/90, pp. 45–48). Section 3248, 25 P.S. § 3248, provides in pertinent part:

> Any candidate or political committee ... which receives any contribution or pledge of five hundred dollars ($500) or more ... *after the final pre-election report has been deemed completed shall report such contribution,* pledge or expenditure to the appropriate supervisor by telegram or mailgram. Such telegram or mailgram shall be sent by the candidate, chairman or treasurer of the political committee *within twenty-four (24) hours of receipt of the contribution.* (Emphasis added.)

The Molinaro Committee contends that its inclusion of these loans in its post-election report evidences its intent to disclose such information and cures any inadequacy. The Auditor concluded that this question was not an issue before him. (Notes of Testimony, 1/27/90, pp. 70–71).

█ Here, however, we must adhere to a strict reading of Section 3248 of the Election Code, which requires Molinaro to report *all* late contributions within twenty-four hours of receipt of those contributions. 25 P.S. § 3248. The purpose of the audit process, as established in *Brunwasser,* is not merely to determine whether the candidate's returns are arithmetically correct, but rather to determine whether any person has accepted contributions, incurred expenses or has expended or disbursed money in contravention of the

Election Code, or has otherwise violated *any* of the provisions of the Code. *Id.,* 487 Pa. at 289, 409 A.2d at 354. Here, there was record evidence that the Molinaro Committee failed to report late contributions in a timely manner, and the Auditor made no finding on this violation. Therefore, we must remand for a finding on this factual question.

## CONCLUSION

The Auditor's duty in reviewing election committee reports, is to check for accuracy and fairness, and determine if all provisions of the Election Code were followed.

Cole sought an audit of the Evanina Committee's expense reports, alleging the unlawful funding of a newspaper advertisement supporting the Molinaro campaign. The Auditor dismissed Cole's exceptions due to a lack of evidence.

Cole also sought the audit of, and the Auditor had before him, the 1989 pre and post-election reports of the Molinaro Committee. The Auditor did not, however, have the Molinaro Committee's *annual* report, which according to the Election Code is a "cumulative" report of a committee's financial receipts and expenditures during a single year. The Auditor held hearings on January 27, 1990, prior to the January 31 filing deadline for this report.

We hold that the Auditor properly concluded that Cole's allegations of Election Code violations were for the most part unsubstantiated and premature.

Accordingly, we dismiss Cole's exceptions to the Auditor's report at docket No. 270 M.D.1989 and agree with the Auditor's recommendation that Cole bear the costs and fees of this audit. However, as to the audit at No. 271 M.D.1989, we will remand for a determination of whether the Molinaro Committee failed to file a report of late contributions, in contravention of Section 3248 of the Election Code. Assessment of costs of that audit will be adjusted accordingly.

## ORDER

Upon consideration of Petitioners' exceptions to the Auditor's report at No. 270 M.D.1989, January 27, 1990, said exceptions are dismissed and petitioners' request for costs and fees are denied. Petitioners shall remit to the Commonwealth Court of Pennsylvania payment for the costs of said audit within thirty days of this order.

The record of the Auditor's report at No. 271 M.D.1989, January 27, 1990, is remanded for a determination of whether the Molinaro Committee violated Section 3248 of the Election Code. The Auditor shall take additional testimony, if he deems it necessary, and shall include all findings necessary to this determination in his report. Exceptions to the Auditor's report relative to this determination shall be filed in this Court within thirty (30) days of the date of said report. Costs of the audit at No. 271 M.D.1989 will be assessed upon final resolution of those exceptions. All other exceptions filed at No. 271 M.D.1989 are hereby dismissed.

BYER, J., did not participate in the decision in this case.