**In re AUDIT OF CAMPAIGN EXPENSES, STATEMENTS, ELECTION REPORTS, AND AFFIDAVITS REQUIRED TO BE FILED WITH the NORTHAMPTON COUNTY ELECTION BOARD Pertaining to the May 10, 1997 Primary Election.**

**Nina Malsch, Doreen Faustner, Charles Anstead, Patricia Strike, Ron Katrick, Jean Szoke and Pamela Yost, Appellants.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 12, 1999.
Decided March 14, 2000.

Nina Malsch, Doreen Faustner and Patricia Strike, appellants, pro se.

John E. Freund, III, Allentown, for appellee.

Before McGINLEY, J., KELLEY, J. and MIRARCHI, Jr., Senior Judge.

KELLEY, Judge.

Nina Malsch, Doreen Faustner, Charles Anstead, Patricia Strike, Ron Katrick, Jean Szoke and Pamela Yost (petitioners) appeal *pro se* from an order of the Court of Common Pleas of Northampton County (trial court) which denied and dismissed their exceptions to the auditor's report of January 20, 1999 and placed the entire cost of the audit on petitioners. We affirm.

The facts of this case are as follows. A primary election was held on May 20, 1997 to elect nominees for four positions for school director in the Northampton Area School District, Northampton County, Pennsylvania. On April 14, 1997, pursuant to Article XVI of the Pennsylvania Election Code (Election Code),[1] a registration statement was filed in the Office of the Northampton County Board of Elections (Election Board) by the political action committee, Striving for Excellence Committee (SFEC).[2] SFEC supported three candidates in the 1997 Election of School Directors: Ted Fritz, Gail Wolfel and D. Michael Penglase, Sr.

Subsequent to filing the registration statement as a political action committee, SFEC filed two campaign expense reports. One report, the "Second Friday Pre–Election Report," covered the reporting period from April 24, 1997 through May 5, 1997 and was filed with the Election Board on May 8, 1997. The second report, "Thirty–Day Post Election Report," covered the reporting period from May 6, 1997 through June 9, 1997 and was filed with the Election Board on June 23, 1997.

On September 17, 1997, petitioners, who are electors in the Northampton Area School District, filed a petition for the audit of campaign expense statements, election reports and affidavits filed by SFEC.[3] In response to the petition, the

---

**1.** Act of June 3, 1937, P.L. 1333, added by the Act of October 4, 1978, P.L. 893, *as amended,* 25 P.S. §§ 3221–3260b.

**2.** Section 1624 of the Election Code, 25 P.S. § 3244, provides that "[a]ny political action committee which receives contributions in an aggregate amount of two hundred fifty dollars ($250) or more shall file a registration statement."

**3.** Section 1636 of the Election Code, 25 P.S. § 3256, provides:

(a) Within ninety (90) days after the last day for filing any report and affidavit required by this act, any five (5) electors of the Commonwealth or of the political division may present a petition to the court of common pleas of the county in which is situated the office where such original report has been filed or with the Commonwealth Court in the case of original report filed with the Secretary of the Commonwealth for an audit of such report. Thereupon the court shall direct the officer or board with whom such report has been filed to certify the same to the court for audit and may, in its discretion, require security to be entered for costs. The court may, in its discretion, appoint an auditor to audit such report, but the fees of such auditor shall be a reasonable sum per day for each day actually engaged. The court or auditor shall fix a day as early as may be convenient for the audit, at which time the person by whom such report has been filed shall be required to be present in person to vouch his report and to answer on oath or affirmation all such relevant questions concerning the same, as may be put to him by petitioners or their counsel. The auditor shall issue subpoenas to all parties whom petitioners or the filer of the report may require, to give evidence concerning such report, and he shall determine, subject to exception, all questions as to the admissibility of evidence, and shall file a copy of the evidence with his findings. If upon the audit, the court shall decide that the report was false in any substantial manner, or that any expenses have been incurred in contravention of this act, the costs of said audit shall be paid by the filer of the report, otherwise the court shall make such order as to payment of costs as shall be just in the circumstances.

trial court appointed an auditor and directed him to conduct an investigation and submit a report pursuant to the Election Code. The auditor held hearings on the matter on March 19, 1998, August 10, 1998, and September 23, 1998. On January 20, 1999, the auditor filed his report.

The auditor made the following findings of fact. SFEC placed an order for 300 political posters with Colonial Intermediate Unit 20 (IU20), which operates a print shop. The IU20 print shop predominantly provides printing services for local schools, but also performs print services for some non-public school entities, e.g. American Legions, Special Olympics, VFWs and other non-profit groups. IU20 print shop services are not available to the general public. IU20 subcontracted the poster print job to Royal Graphics, which charged IU20 a trade price of $273. IU20 marked up its costs by thirty percent and charged SFEC the total sum of $354. No credible testimony as to the usual price for the type of posters in question was presented. SFEC lists no in-kind contributions from IU20 in the campaign expense reports filed on May 8, 1997 and June 23, 1997.

SFEC ordered five thousand postcards from Alphagraphics prior to the May 1997 Primary. The postcards endorsed candidates Wolfel, Fritz and Penglase and were identified as "Paid for By the Striving for Excellence Committee." The postcards were printed and delivered to SFEC prior to the Primary Election and were distributed to voters on and before May 20, 1997. The postcards were not paid for at the time of delivery. Between the date of delivery and October 10, 1997, Ted Fritz contacted Alphagraphics on at least six occasions requesting an invoice for the postcards. An invoice, in the amount of $249.94 was sent to SFEC on October 10, 1997. No expenditure for the cards was listed in the campaign expense reports filed by SFEC on May 8, 1997 or June 23, 1997. The expenditure was listed on the campaign expense report filed on October 24, 1997. Prior to the filing deadline for

the Thirty Day Post Election Report, Fritz was advised by Richard Benner, the Chief Registrar for Northampton County, that an expense is not required to be reported until an invoice is received.

Candy Barr Heimbach, attorney and treasurer of SFEC, provided professional services as legal counsel for SFEC by way of a letter dated July 8, 1997, a telephone conference with Nina Malsch on August 6, 1997, and a meeting with petitioners on August 8, 1997. The services were performed in her individual capacity and not as an employee of her law firm. Charges for those services in the amount of $70 were invoiced September 26, 1997 and reported as in-kind contributions by Heimbach's law firm for the reporting period of June 10, 1997 to October 20, 1997. On March 25, 1998, Heimbach on behalf of SFEC filed an amendment to the expense report indicating that the in-kind contribution of legal services was by her, individually, and not by the law firm. The campaign expense reports filed by SFEC on May 8, 1997 and June 23, 1997 contained no in-kind contribution from Heimbach for professional legal services as all services rendered were performed after June 9, 1997, the last day of the reporting period for the Thirty Day Post Election Report.

Based upon these findings, the auditor made the following conclusions. SFEC did not receive an in-kind contribution from IU20. SFEC incurred an unpaid debt for the printing of five thousand postcards which should have been reported on the Thirty Day Post Election Report. The failure to report the unpaid postcard debt did not make the campaign expense report false in any substantial manner. Heimbach performed no professional services which were reportable as an in-kind contribution on the Thirty Day Post Election Report. Heimbach's in-kind professional services were properly reported on the campaign expense report filed October 24, 1997, as amended March 25, 1998.

Ultimately, the auditor determined that SFEC committed only technical violations

of the Election Code and that these violations were unintentional and subsequently rectified. The auditor recommended that SFEC pay $499.88 of the audit, which was calculated by doubling the amount of the postcard debt which SFEC failed to timely report, and that petitioners pay the remainder.[4]

On February 1, 1999, petitioners filed exceptions to the auditor's report. On February 12, 1999, SFEC also filed exceptions to the auditor's report.[5] Both parties filed briefs in support of the exceptions filed. The trial court reviewed the briefs, notes of testimony, auditor's report and other documents of record. The trial court confirmed the auditor's conclusions regarding violations of the Election Code, but modified the auditor's distribution of costs. While the trial court essentially adopted the auditor's findings of fact, the trial court did make some of its own findings and determinations.

With regard to the political posters, the trial court affirmed the auditor's conclusion that there was no substantial violation of the Election Code. The trial court determined that the auditor's inability to conclude that the price charged was below the usual and normal price for such a printing was reasonable due to substantial conflicting testimony. The trial court found that there was no evidence that SFEC candidates accepted the posters at the price charged in knowing contravention of the Election Code or that SFEC knew that it was receiving the posters at a price below the usual and normal price. The trial court determined that even if the price charged was below the usual price, it was not substantially below it. The trial court

further determined that there was an insufficient record from which to conclude that IU20 had violated the Election Code by improperly facilitating the printing of posters and that the Department of Education is better suited to address this issue.

With regard to the campaign postcards, the trial court agreed with the auditor's report that SFEC violated the Election Code by failing to the report debt or expenditure for the postcards on the Thirty Day Post Election Report. The trial court further agreed that the violation did not render the report false in any substantial manner, particularly in light of the fact that SFEC had requested an invoice on numerous occasions. The trial court also concluded that no in-kind contribution was made by the print company with regard to the postcards.

Lastly, the trial court determined that the auditor did not err in finding no violation of the Election Code with regard to alleged in-kind contributions of legal services by Heimbach or her law firm. The trial court reviewed the evidence which petitioners argued indicated a violation and found that even if such in-kind contributions were improperly made, the resulting violations were *de minimis*.

By order and opinion dated June 11, 1999, the trial court denied the exceptions, confirmed the report of the auditor, and directed that the entire cost of the audit be borne by petitioners. This appeal now follows.[6]

On appeal, petitioners have presented the following issues for our review:

---

4. The entire cost of the audit was $6,113 ($4,575 for the auditor and $1,538 for stenographic services).

5. Petitioners filed a motion to strike SFEC's exceptions for failure to file them in a timely manner, which was ultimately denied by the trial court.

6. This Court has appellate jurisdiction over the final order of a common pleas court pursuant to Section 762(a)(4)(i)(C) of the Judicial

Code, 42 Pa.C.S. § 762(a)(4)(i)(C). Our scope of review is limited to an examination of the record to determine whether the trial court committed errors of law and whether the trial court's findings were supported by adequate evidence. *In re General Election for District Justice in Judicial District 36–3–03*, 695 A.2d 476 (Pa.Cmwlth.1997), *petition for allowance of appeal denied*, 556 Pa. 715, 729 A.2d 1132 (1998).

1. Did IU20 provide a reportable or illegal in-kind contribution to the political action committee by providing the political posters at a price below the usual and normal charge for the goods?

2. Did IU20, a quasi municipal corporation and component of the public school system, violate any provision of the Election Code by printing/facilitating political posters for a political action committee supporting three constituent school board candidates?

3. Is the failure to report an expenditure of campaign postcards during the required reporting period a violation of the Election Code which does not make the Report false in any substantial matter?

4. Did the printer of campaign postcards provide a reportable or illegal in-kind contribution to the political action committee when his intent was not to be paid for the postcards and when he granted the committee a five-month forbearance before invoicing the campaign material?

5. Did the treasurer of the political action committee, an attorney, provide any reportable or illegal in-kind contribution during the reporting period in question?

6. Did the three candidates accept any contribution or incur any expense in contravention of the Election Code?

7. Should petitioners bear the cost of the audit?

■ We begin our analysis by reiterating the principle enunciated by our Supreme Court: The Election Code should be liberally construed to carry out the evident legislative intent that expense accounts of candidates for public office be' subject to the closest scrutiny. *In re Shapp,* 476 Pa. 480, 383 A.2d 201 (1978);

*Appeal of Angle,* 162 Pa.Cmwlth. 430, 639 A.2d 875, *petition for allowance of appeal denied,* 539 Pa. 669, 652 A.2d 839 (1994). An audit is the enforcement mechanism used to carry out that intent. *Brunwasser v. Fields,* 487 Pa. 283, 409 A.2d 352 (1979). The purpose of the audit procedure is not only to determine whether the candidates' returns are mathematically correct, but also to determine whether any person has accepted campaign contributions in contravention of the Election Code. *Angle.*

If a trial court determines upon the audit that any person has accepted contributions, incurred expense, expended or disbursed money in contravention of the Election Code or otherwise violated any provision of the Election Code, the trial court shall certify its decision to the appropriate prosecutorial officer [7] who shall institute criminal proceedings as deemed necessary. Section 1636(b) of the Election Code, 25 P.S. § 3256(b). If a candidate is found by any court of this Commonwealth in criminal proceedings to have willfully accepted contributions or made any expenditures in contravention of the Election Code, the candidate may be subject to such penalties as forfeiture of office. Section 1637 of the Election Code, 25 P.S. § 3257. However, "[i]t can fairly be said that the legislature did not intend all violations—e.g., minor or trivial infractions—of the Election Code to be the basis for such harsh penalties as forfeiture of office or criminal prosecutions." *Brunwasser,* 487 Pa. at 291–292, 409 A.2d at 356. With these principles in mind, we will address the issues raised by petitioners.

### Political Posters

■ Petitioners contend that the trial court erred in determining that there was not a substantial violation of the Election Code where the evidence presented demonstrates that IU20 provided a reportable in-kind contribution to SFEC by providing

7. "Prosecutorial officer" refers to the attorney general of this Commonwealth or the district attorneys of the respective counties. Section 1621(i) of the Election Code, 25 P.S. § 3241(i).

political posters at a price below the usual and normal charge for such goods. We disagree.

Section 1626 of the Election Code requires candidates and political action committees to file reports of receipts and expenditures. Each report shall include:

(1) The full name, mailing address, occupation and name of employer, if any, or the principal place of business, if self-employed, of each person who has made one or more contributions to or for such committee or candidate within the reporting period in an aggregate amount or value in excess of two hundred fifty dollars ($250), together with the amount and date of such contributions. The accuracy of the information furnished to the candidate or committee shall be the responsibility of the contributor.

(2) The full name and mailing address of each person who has made one or more contributions to or for such committee or candidate within the reporting period in an aggregate amount or value in excess of fifty dollars ($50), together with the amount and date of such contributions. The accuracy of the information furnished by the contributor shall be the responsibility of the contributor.

(3) The total sum of individual contributions made to or for such committee or candidate during the reporting period and not reported under clauses (1) and (2).

(4) Each and every expenditure, the date made, the full name and address of the person to whom made and the purpose for which such expenditure was made.

(5) Any unpaid debts and liabilities, with the nature and amount of each, the date incurred and the full name and address of the person owed.

(6) The account shall include any unexpended balance of contributions or other receipts appearing from the last account filed.

Section 1626 of the Election Code.

As defined by the Election Code, the word "contribution" shall mean "any payment, gift, subscription, assessment, contract, payment for services, dues, loan, forbearance, advance or deposit of money or any *valuable thing,* to a candidate or political committee made for the purpose of influencing any election in this Commonwealth or for paying debts incurred by or for a candidate or committee before or after any election." Section 1621(b) of the Election Code, 25 P.S. § 3241(b), (emphasis added). Contribution shall also include "the granting of discounts ... not available to the general public." *Id.* "Valuable thing" is defined as "all securities, goods, facilities, equipment, supplies, personnel, advertising, services, membership lists commonly offered or used commercially or *other in-kind contributions provided without compensation, or at compensation which is below the usual and normal compensation for the items. The dollar value of a contribution of a valuable thing is the difference between the usual and normal charge for goods or services at the time of the contribution and the amount charged the candidate or political committee."* Section 1621(k) of the Election Code (emphasis added).

In the case before us, both sides presented evidence with regard to the "usual and normal" cost of the political posters. However, the auditor found that none of the experts were able to establish the "usual and normal" price for the print work performed by the IU20 print shop and that the evidence presented in this regard was not credible. Without competent evidence to establish the "usual and normal" price for the print work, the auditor was unable to find that SFEC received a discounted or less than usual and normal price for the work. The trial court found the auditor's inability to determine the "usual and normal" price for the print work was reasonable due to the substan-

tial conflicting evidence. Without competent evidence to establish the "usual and normal" price for the printing work, we cannot conclude that an improper in-kind contribution was made by IU20. We, therefore, conclude that the trial court did not err in this regard.[8]

■ Petitioners also contend that IU20, a quasi municipal corporation and component of the public school system, violated the Election Code by facilitating in the production of political posters for a political action committee.[9] We disagree.

■ An intermediate unit is a legislatively created entity and part of the public school system. *Kaufman v. Central Susquehanna Intermediate Unit,* 144 Pa. Cmwlth. 163, 601 A.2d 412 (1991). Each intermediate unit has been established to provide on a regional basis certain educational services to school districts assigned to each intermediate unit. *Com. ex rel. Waychoff v. Tekavec,* 456 Pa. 521, 523, 319 A.2d 1, 2 (1974). Like school districts, intermediate units only have such powers and authority as are granted to it by the General Assembly. *Kaufman; Petition of Granat,* 139 Pa.Cmwlth. 376, 590 A.2d 849 (1991).

In addition to arguing that IU20 violated the Election Code by providing the posters to SFEC at a discounted price as discussed above, petitioners also appear to argue that IU20, as a legislatively created entity and part of public school system, was not authorized to facilitate in the production of political campaign posters for a political organization. Unfortunately, petitioners have failed to identify how IU20's "facilitation" in this regard is a violation of the Election Code. Whether or not IU20 has violated some other law or acted beyond the scope of its duties by producing campaign literature based upon its identity as an intermediate unit is beyond the scope of an audit of campaign expense reports.[10]

### Post Cards

■ Petitioners contend that the trial court erred or abused its discretion in determining that the failure to report an expenditure of campaign postcards during the required reporting period was not a substantial violation of the Election Code. We disagree.

As stated previously, Section 1636 of the Election Code requires candidates and political action committees to report, each and every expenditure and any unpaid debts and liabilities. SFEC ordered and received 5,000 political postcards prior to the Primary Election. However, no expenditure for the cards was listed in the campaign expense reports filed by SFEC on May 8, 1997 or June 23, 1997. The expenditure was not invoiced until October 10, 1997 and subsequently not reported until October 24, 1997. The trial court determined that the failure to timely re-

8. We note, however, that the trial court did find that "had SFEC contracted directly with the company which printed the posters, the price would have been double the wholesale rates charged to the Intermediate Unit" and that IU20 did not charge SFEC any sales tax. Although these findings create an impression that IU20 improperly facilitated the printing of the posters by providing a service at a cost which was below the usual and normal expense for these items, the trial court found that there was no evidence that SFEC candidates accepted the posters at the price charged in knowing contravention of the Election Code, nor was there any evidence presented that SFEC knew that it was receiving the posters at a price below the usual and normal price. *See* Section 1637 of the Elec-

tion Code (consequences for a candidate's "willful" violation of the Election Code). The trial court further found that even if the price charged for the posters was below the usual and normal price, it was not substantially below it to warrant a referral to the appropriate prosecutorial officer under Section 1636 of the Election Code.

9. This issue was not addressed by the auditor. The trial court determined that there were not enough facts to resolve the issue.

10. As the trial court noted, this issue has been referred to the Department of Education. Trial Court Opinion at page 10.

port the expenditure was a violation of the Election Code. The trial court explained that an invoice cannot be the key to determining the existence of the debt or the reporting requirement. "If this were the case, the reporting provisions could be circumvented and avoided by simply requesting that no invoice be sent for debts incurred until later stages of the campaign." Trial court opinion, p. 12. The trial court determined, however, that the violation was not substantial in light of the auditor's finding that SFEC made numerous attempts to get an invoice for the cards. Although petitioners challenge this finding, our review of the record reveals that this finding is amply supported by the testimony of candidate Ted Fritz. Fritz testified that he contacted the printing company on at least six occasions requesting an invoice for the postcards. Reproduced Record (R.) 391a–392a. Fritz also testified that he was advised by Richard Benner, the Chief Registrar for Northampton County, that an expense is not required to be reported until an invoice is received. R. 394a. Fritz's testimony is corroborated by the testimony of Benner. R. 410a. We further note that the violation was subsequently rectified by the inclusion of the postcard expenditure on the campaign expense report filed October 24, 1997. *See Cole v. Evanina,* 139 Pa.Cmwlth. 219, 590 A.2d 72, 75 (1991) ("potential irregularities in the committee's pre- and post-election reports could be rectified in its ... annual report"). We, therefore, conclude that the trial court did not err in determining that SFEC's violation of the Election Code was not substantial.

■ Petitioners further contend that the trial court erred in determining that the printer of the campaign postcards did not provide a reportable or illegal in-kind contribution to SFEC, where the printer intended to donate the postcards and de-

layed invoicing for five months.[11] We disagree.

Even if the printer had no intention of being paid for the postcards, the fact remains that the printer did issue an invoice and was ultimately paid for the print work. The five-month delay in issuing the invoice for $249.94 can hardly be construed as "forbearance" amounting to a reportable contribution under the Election Code, particularly in light of the fact that SFEC had made numerous requests for the invoice. Even if we were to construe the five-month delay as a "forbearance," the value, if any, of such a "contribution," is purely *de minimis* and not subject to the reporting requirements. *See* Section 1626(b)(2) of the Election Code ("Each report shall include ... [t]he full name and mailing address of each person who has made one or more contributions to or for such committee or candidate within the reporting period in an aggregate amount or *value in excess of fifty dollars ($50) ....").[12]* We, therefore, conclude that the trial court did not err in determining that no violation occurred.

*Contributions by Candy Barr Heimbach*

■ Petitioners contend that the trial court erred in determining that there was no Election Code violation in connection with the reporting of professional legal services by the treasurer of SFEC, Candy Barr Heimbach. We disagree.

The auditor concluded that neither Heimbach nor her law firm provided any reportable in-kind contributions during the Thirty Day Post Election Report period and that any legal services provided by Heimbach in the subsequent reporting period were duly reported. Petitioners took exception to the auditor's report claiming that Heimbach and/or her law firm provided legal services within the Thirty Day Post Election Report period in the prepa-

---

11. This issue was not addressed by the auditor.

12. Assuming that we calculate the forbearance at a 15 percent interest rate, the value of a five-month forbearance on $249.94 would be approximately $15.

ration and filing of the Second Friday Pre-election Report on May 8, 1997 and that these services were not duly reported.[13] In support of this claim, petitioners note that the Second Friday Pre–Election Report lists Heimbach's phone number as the business phone at the law firm and that law firm stationery was used to send the report. Petitioners also argue that the fact that Heimbach provided legal services during the reporting period covered by the October 24, 1997 report is indicia that similar services were provided during the period covered by the Thirty Day Post Election Report. However, other than the items relied upon by petitioners, there is no evidence from which to conclude that Heimbach provided legal services during the period in question. We agree with the trial court's determination that even if the items relied upon by petitioners constitute reportable in-kind contributions, SFEC's failure to report them would only be a *de minimis* violation. We, therefore, conclude that the trial court did not err in determining that any alleged reporting irregularity in connection with the legal services provided was not a substantial violation of the Election Code.

### Costs of the Audit

 Lastly, Petitioners contend that the trial court abused its discretion in determining that petitioners should bear the entire cost of the audit. We disagree.

Section 1636(a) of the Election Code provides that "[if] upon the audit, the court shall decide that the report was false in any substantial manner, or that any expenses have been incurred in contravention of this act, the costs of said audit shall be paid by the filer of the report, *otherwise the court shall make such order as to payment of costs as shall be just in the circumstances.*" (Emphasis added).

In the case before us, the trial court determined that the reports filed by SFEC were not false in any substantial manner

and that SFEC did not accept contributions, incur expense or expend or disburse money in contravention of the Election Code. As the only violation found was determined to be *de minimis* in nature, we conclude that the trial court did not abuse its discretion by ordering petitioners to bear the full cost of the audit.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 14th day of March, 2000, the order of the Court of Common Pleas of Northampton County, dated June 11, 1999, at Docket No. 1997–CM–6736, is affirmed.

---

**13.** The Second Friday Pre-election Report, filed May 8, 1997, was filed within the report-ing period for the Thirty Day Post Election Report (May 6, 1997 through June 9, 1997).