**William J. SCOTT, Jr., Esq., and Diane LeBold, and Robert W. Haniwalt, Jr., Diane Edwards, and William F. Talley, Appellants**

v.

**Nancy WILKINSON.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 1, 2004.

Decided Dec. 6, 2004.

Samuel C. Stretton, West Chester, for appellant.

Dawson R. Muth, West Chester, for appellee.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

William J. Scott, Jr., Esquire, Diane Lebold, Robert W. Haniwalt, Jr., Diane Edwards and William F. Talley (jointly Appellants) are registered voters in West Chester East, Pennsylvania, a newly created magisterial district. Appellants appeal the order of the Court of Common Pleas of Chester County which, after conducting a requested audit pursuant to Section 1636 of the Pennsylvania Election Code (Election Code),[1] found the campaign expense reports of Nancy Wilkinson, the Republican Party (Party) nominee for the office of District Justice in the Borough of West Chester, "not false in any substantial manner." (Tr. Ct. Order, April 24, 2004.)

On appeal, Appellants argue that the trial judge erred by (1) not ordering Wilkinson to establish her own campaign committee and file election financial reports; (2) not finding that she improperly used the local Party Committee to fund her campaign, solicit contributions and prepare literature for distribution; and (3) not finding that Wilkinson circumvented Rule 15D(4) of the Pennsylvania Rules Governing Standards of Conduct of District Justices (Rules).

The facts of this case are as follows. Wilkinson entered the November 2003 race after the withdrawal of the original Party nominee for the position of District Justice in West Chester.[2] During her abbreviated campaign, lasting from September until November, 2003, Wilkinson did not open a campaign committee in her name. (N.T. at 6.)

Wilkinson maintained a campaign manager for press-related matters. She met with representatives of the Party in West Chester, engaged in joint development of campaign literature on her behalf and devised a strategy for its distribution. (N.T. at 21, 49.) The Party's campaign committee paid for and distributed eight campaign pieces for Wilkinson, some of which failed to display the "paid for" disclaimer. (*See* Ex. A, B.) All contained her picture and her statements. (*See* Ex. A–H.)

Wilkinson spoke with certain leaders in the West Chester community in an attempt to obtain support for her nomination, and the names of some of these individuals appeared on her campaign pieces. She also went door-to-door seeking voter support for her campaign.

Wilkinson provided representatives of the Party with a list of 20–30 names they could contact to raise funds on her behalf. (N.T. at 60–61.) She denies asking people to contribute money to her campaign (N.T. at 17, 63–64); instead, she testified that she directed all contributions *proffered* by constituents (approximately 6) be forward-

---

1. The Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 3256. Section 1636 was added by Section 2 of the Act of October 4, 1978, P.L. 893, 25 P.S. § 3256.

2. The Democratic candidate was ultimately elected to the District Justice seat.

ed to the Party committee. (N.T. at 36, 64.)

Appellants filed a Complaint/Petition in late October 2003, seeking an election audit of financial reports and filings in Wilkinson's campaign. Wilkinson filed preliminary objections to the Complaint, which the trial court subsequently denied. She then filed a timely answer.

The trial court held a hearing on the audit at which Wilkinson was the sole witness. The trial court rendered its decision based on the stated purpose of the audit procedure in election proceedings: "to determine whether the candidates' returns are mathematically correct and also to determine whether the candidate has accepted campaign contributions or incurred expenses or expended or disbursed money in contravention of the Election Code." (Tr. Ct. order, April 24, 2004, n. 1). (citing *Brunwasser v. Fields*, 487 Pa. 283, 409 A.2d 352 (1979)); *Cole v. Evanina*, 139 Pa.Cmwlth. 219, 590 A.2d 72 (1991); *In re Audit of Campaign Expenses, Statements, Election Reports and Affidavits*, 747 A.2d 1262 (Pa.Cmwlth.2000), *petition for allowance of appeal denied*, 568 Pa. 667, 795 A.2d 979 (2000). The court found that Wilkinson's reports were "not false in any substantial manner" and that "no expense was incurred in contravention of the Election Code, 25 P.S. § 3256." (Tr. Ct. order, April 24, 2004.) In a footnote to the order, the court noted that Appellants "contended that they were trying 'to reach a larger

issue'," which the court described as "an objection to campaign advertising in support of a particular candidate being given and paid for by a political committee other than one formed specifically for the candidate." (Tr. Ct.order, n. 1.) The court found this issue to be beyond the scope of its audit.[3] Appellants have appealed the trial court's order to this Court.[4]

■ Appellants first contend that the trial judge erred by failing to order that Wilkinson, pursuant to the audit procedure under the Election Code, establish a campaign committee and file election financial reports. In support of their argument, Appellants rely upon the following statement in *In re Audit of Campaign Expenses:*

> The Election Code should be liberally construed to carry out the evident legislative intent that expense accounts of candidates for public office be subject to close scrutiny ... The purpose of the audit procedure is not only to determine whether the candidate's returns are mathematically correct, but also to determine whether any person has accepted campaign contributions in contravention of the Election Code.

*Id.*, 747 A.2d at 1267. Given this broad approach to the election auditing process, Appellants contend that the trial court had sufficient discretion in administering the audit to *order* Wilkinson to form a campaign committee and file the necessary

---

**3.** In an opinion written pursuant to Pa. R.A.P. No.1925(a), the trial court further articulated Appellants' issue as follows:

> Must a candidate who receives less than two hundred and fifty ($250) dollars in campaign contributions nevertheless form a campaign committee and report as contributions monies donated to another entity (which other entity is itself required to and does report donations to it and identifies the donor to the same extent as would the candidate) when there is a fair inference

that some of those funds were donated to that other entity for the purpose of aiding the candidacy of the candidate?

(Tr. Ct. op., July 5, 2004, at 1.)

**4.** Our scope/standard of review is limited to an examination of the record to determine whether the trial court committed an error of law and whether its findings are supported by adequate evidence. *In re Audit of Campaign Expenses*, 747 A.2d at 1266 n. 6.

reports. Appellants further argue that, by having her campaign contributions deposited with the Party, Wilkinson effectively hid from the public's view the identities of her supporters, contributions and expenditures made on her behalf. They claim this sets a dangerous precedent because parties coming before a district justice will be unable to determine who might have contributed money to his or her campaign. Appellants also contend that the trial court ignored facts in this case when it found that Wilkinson did not personally accept campaign contributions in contravention of the Election Code.

Wilkinson, in contrast, contends that the Election Code does not require a candidate for any office to open a campaign committee and produce reports unless that candidate intends to receive contributions or make expenditures exceeding $250. Wilkinson, like the trial court, questions the information that could be included on her report if no contributions were made directly to her and she made no expenditures in excess of $250. She further argues that the audit procedure set forth in the Election Code cannot and should not be used as an offensive weapon to now force her to open a campaign committee. We agree.

■ The Election Code does not require a candidate for the position of District

Justice to open a campaign committee where she receives and spends less than $250 on her campaign. Rather, it provides a section to specifically address reporting requirements for those candidates who do not form a political committee. Section 1626.1 of the Election Code requires a candidate for local office, including county, township, city, school district, magisterial district, town and borough offices, *who does not form a political committee,* to file an affidavit attesting:

(1) that [he or she] does not intend to receive contributions or make expenditures in excess of two hundred fifty dollars ($250) during any reporting period;

(2) that [he or she] will keep records of contributions and expenditures, as required by [the Election Code];

(3) that [he or she] will file reports in accord with sections [25 P.S. §§ 3246 and 3247] for any reporting period during which he [or she] receives contributions or makes expenditures in excess of two hundred fifty dollars ($250).

25 P.S. 3246.1(a).[5] Here, the trial court found that Wilkinson spent less than $250 on her campaign and there is substantial evidence to support that finding.[6]

**5.** Added by Section 7 of the Act of July 11, 1980, P.L. 591.

**6.** Two evenings during Wilkinson's campaign, volunteers made phone solicitations from the law offices of Goldberg, Meanix & Muth. (N.T. 52–53.) Appellants infer that Wilkinson should include the costs of this "phone bank" as "in-kind contributions" in her campaign contributions. (N.T. 53.)

Wilkinson was not required to include the costs for such services in her total contributions. Section 1621(b) of the Election Code, added by Section 2 of the Act of October 4, 1978, P.L. 893, 25 P.S. § 3241(b), provides that a "contribution" to a candidate's cam-

paign includes, *inter alia,* any "valuable thing." A "valuable thing" includes in-kind contributions provided without compensation or at compensation below the usual and customary compensation for such items. *Id.* However, the Election Code also excludes certain categories from the definition of "valuable thing," which "shall not be deemed a contribution or expenditure for the purposes of reporting or record keeping." Section 1621(k) of the Election Code, 25 P.S. § 3241(k). These *exclusions* include "voluntary personal services provided by individuals who volunteer a portion or all of their time on behalf of a candidate or political committee;" "the use of real … property;" and,

■ Appellants next contend that the trial court erred by failing to find that Wilkinson improperly used the Party committee to fund her campaign, solicit contributions, and prepare campaign literature for distribution. Wilkinson argues that Appellants have provided no legal basis or authority to support their argument that she improperly used the Party committee for such purposes. She contends that the Party is permitted to collect money and expend it on her behalf. Again, we agree.

There is no prohibition in the Election Code and, in fact, the Election Code specifically permits a local committee to raise and spend money to elect endorsed candidates. A "political committee" is defined in Section 1621(h) of the Election Code as "*any committee, club, association or other group of persons which receives contributions or makes expenditures.*" 25 P.S. § 3241(h) (emphasis added). Thus, the Party campaign committee located in West Chester would be included within the terms of this definition. Section 1623 of the Election Code specifically permits "the treasurer of any State, county, city, borough, township, ward or other regularly

constituted *party committee of any political party . . . to receive money on behalf of the candidates* of such political party . . . in a general, municipal or special election. . . ." 25 P.S. § 3243 [7] (emphasis added). Appellants have provided no evidence indicating that the Party committee segregated funds to be used only on *Wilkinson's* campaign. Section 1621(d)(1) permits the *expenditure of money* by such Party committee "*for the purpose of influencing the outcome of an election.*" 25 P.S. § 3241(d)(1) (emphasis added).[8] Pursuant to Sections 1626 and 1627 of the Election Code, it becomes the responsibility of the Party committee to report, properly, the funds it has received and the expenditures it has made. *See* 25 P.S. §§ 3246, 3247.[9]

■ As their third issue, Appellants maintain that Wilkinson circumvented Rule 15D(4) of the Pennsylvania Rules of Civil Procedure for District Justices (Pa. R.C.P.D.J.) (**Rules Governing Standards of Conduct of District Justices**) (hereinafter "Rules"), by soliciting financial and political support through the Party Committee.[10] Appellants contend that this

---

"the use of the . . . business or office space of any volunteer." Sections 1621(k)(1), (3) and (7), 25 P.S. § 3241(k). Because a phone bank would, by definition, fall within these exclusions, *i.e., individual volunteers used the office space of another volunteer for two evenings to make phone calls on behalf of Wilkinson's campaign, its costs were correctly not included among Wilkinson's contributions.

7. Added by Section 2 of the Act of October 4, 1978, P.L. 893.

8. The word "expenditure" means:
(1) the payment, distribution, loan or advancement of money or any valuable thing **by a** . . . **political committee** . . . for the purpose of influencing the outcome of an election;
25 P.S. § 3241(d)(1) (emphasis added).

9. Both Sections were added by Section 2 of the Act of October 4, 1978, P.L. 893, *as*

*amended.* Section 1626(a) provides, in pertinent part:
> Each treasurer of a political committee . . . shall file with the appropriate supervisor reports of receipts and expenditures on forms, designed by the Secretary of the Commonwealth, if the amount received or expended or liabilities incurred shall exceed the sum of two hundred fifty dollars ($250).
25 P.S. § 3246(a).
Section 1627(a) requires all political committees and candidates with aggregate expenditures and aggregate debt greater than $250 to file a report on January 31 of each year with information complete as of December 31 of the prior year. 25 P.S. § 3247(a).

10. Rule 15D(4) of the Rules provides:
(D) With respect to his campaign conduct, a district justice or a candidate for such office shall:
. . .

Rule requires a candidate for District Justice to form a campaign committee when the candidate seeks public support, contributions, or makes expenditures, which they claim Wilkinson did when she: (1) told people who wanted to contribute to her campaign to contribute to the Party and (2) provided names to the Party of persons likely to contribute money for her campaign. Appellants cite *In re Nomination Petition for Denick*, 729 A.2d 168 (Pa.Cmwlth.1999), for the proposition that "the Standards of District Justices are applicable to specific election matters where the standards correctly implicate requirements under the Election Code." [11] (Appellants' Br. at 22.) Appellants contend that, like the candidate in *Denick*, Wilkinson had an obligation to open a campaign committee, pursuant to Rule 15D(4), when she began distributing and preparing campaign literature, seeking public support through endorsements, and telling people to contribute to the Party.

Wilkinson counters that Appellants appear to be arguing that if she violated the Rules, she must *also* have violated the Election Code. She also argues that the *Denick* case is factually inapposite, and that "Appellants' inference that the Commonwealth Court could 'force' [Wilkinson] to form a committee just as the Court struck a nomination petition is far-fetching." (Appellee's Br. at 9.)

We agree. There is no evidence showing that Wilkinson violated either the Rules or the Election Code. Furthermore, simply because this Court struck a nomination petition under the Election Code, based on a violation of the Rules, as in *Denick*, it does not follow that we have jurisdiction to hear complaints based *solely* on a violation of the Rules, particularly where the requirement in the Rules is not present in the Election Code. As stated in Wilkinson's brief, "[t]he audit procedure is not meant to provide a vehicle for those who feel a candidate may have violated a provision of some other legislative mandate or for those who wish to see who contributed to what campaign." (Appellee's Br. at 5.) We, thus, also agree that Appellants' use of the audit procedure outlined in the Election Code is not the proper method for determining whether a candidate has violated the Rules. Alleged violations of the Rules are not brought in the courts of common pleas, but, rather, must come before the Court of Judicial Discipline. *See* Pa. Const., Art. V, § 18; *In re David Paul Miller*, 759 A.2d 455

(4) not himself solicit or accept campaign funds, or solicit publicly stated support, but he may establish committees of responsible persons to secure and manage the expenditure of funds for his campaign and to obtain public statements of support for his candidacy. Such committees are not prohibited from soliciting campaign contributions and public support from lawyers....

11. In *Denick*, an elected member of the local Democratic Committee filed a nomination petition seeking to have his name placed on the ballot as a candidate for District Justice. Three qualified electors objected to Denick's petition. They contended the petition violated the Election Code because Denick held a political office at the time he became a candidate for District Justice. The trial court agreed and struck Denick's name from the ballot. Denick appealed to this Court, claiming that the trial court "did not have jurisdiction to address his status as party officeholder as a disqualification to assuming the position of District Justice." 729 A.2d at 169. This Court disagreed. We held, pursuant to Section 977 of the Election Code, 25 P.S. § 2937, that a trial court has the authority to strike a candidate's name from the ballot if that candidate is precluded from being a candidate. We noted that the Rules "clearly prohibit a candidate for District Justice from holding an office in a political party." *Id.* at 170 (citing Pa. R.C.P.D.J. No. 15B(1)) (emphasis omitted). Therefore, we found the trial court acted in accordance with the Election Code in striking Denick's name from the ballot.

(Pa.Ct.Jud.Disc.2000) (holding that jurisdiction of the Court of Judicial Discipline includes, *inter alia*, the ability to review the conduct of an unsuccessful District Justice-candidate). Therefore, allegations that Wilkinson violated these Rules were not properly before the court.

Accordingly, the order of the trial court is affirmed.

### ORDER

**NOW,** December 6, 2004, the order of the Court of Common Pleas of Chester County in the above-captioned matter is hereby affirmed.